## ORAL ARGUMENT NOT YET SCHEDULED

No. 15-5120
_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**LAURA HOLMES,** *et al.*,
Plaintiffs-Appellants,

v.

**FEDERAL ELECTION COMMISSION**,
Defendant-Appellee.
_____

On appeal from the United States District Court
for the District of Columbia, No. 14-1243 (RMC)
_____

## BRIEF FOR THE FEDERAL ELECTION COMMISSION
_____

Daniel A. Petalas
Acting General Counsel
dpetalas@fec.gov

Lisa J. Stevenson
Deputy General Counsel – Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Erin Chlopak
Acting Assistant General Counsel
echlopak@fec.gov

Steve N. Hajjar
Attorney
shajjar@fec.gov

Charles Kitcher
Attorney
ckitcher@fec.gov

FEDERAL ELECTION
COMMISSION
999 E Street, NW
Washington, DC 20463
(202) 694-1650

September 16, 2015

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the Federal Election Commission ("Commission") submits its Certificate as to Parties, Rulings, and Related Cases.

**(A)** *Parties and Amici*.  Laura Holmes and Paul Jost were the plaintiffs in the district court and are the appellants in this Court.  The Commission was the defendant in the district court and is the appellee in this Court.  No parties participated as amici curiae in the district court, and no parties have requested to participate as amici curiae before this Court.

**(B)** *Rulings Under Review*.  Holmes and Jost appeal the April 20, 2015 opinion and order of the United States District Court for the District of Columbia (Collyer, J.) holding that plaintiffs' claims rest on issues of settled law and thus denying their motion for certification and granting summary judgment to the Commission in this suit brought under 52 U.S.C. § 30110.  The district court's opinion is available at ___ F. Supp. 3d ___, 2015 WL 1778778 (D.D.C. Apr. 20, 2015).  (J.A. 266-309.)

**(C)** *Related Cases*.  This case was previously before the en banc Court of Appeals as No. 14-5281, where the Court remanded the case to the district court by order of January 30, 2015 (J.A. 59).

# TABLE OF CONTENTS

**Page**

COUNTERSTATEMENT OF JURISDICTION ................................................ 1

COUNTERSTATEMENT OF ISSUES PRESENTED...................................... 1

APPLICABLE STATUTES AND REGULATIONS ........................................ 2

COUNTERSTATEMENT OF THE CASE....................................................... 2

I.     STATUTORY AND REGULATORY BACKGROUND ....................... 2

       A.     Congress's Original Enactment of Per-Year Limits on
              Contributions to Candidates ............................................................ 2

       B.     FECA's Per-Election Limit on Contributions to Candidates.......... 3

       C.     The Supreme Court's Upholding of FECA's Contribution Limit .. 4

       D.     FECA's Current Per-Election Contribution Limit and the
              Commission's Implementing Regulations ...................................... 5

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................. 9

       A.     The Parties ...................................................................................... 9

       B.     Procedural History......................................................................... 11

       C.     District Court Opinion................................................................... 12

SUMMARY OF ARGUMENT ..................................................................... 17

ARGUMENT ................................................................................................ 20

I.     STANDARDS OF REVIEW............................................................... 20

II.    THE DISTRICT COURT PROPERLY REJECTED CONTRIBUTORS'
       FIRST AMENDMENT CHALLENGE ................................................. 21

i

A.    The District Court Correctly Accepted the Supreme Court's Conclusion That the Government's Important Anticorruption Interest Justifies FECA's Per-Election Contribution Limit .......... 21

B.    Contributors' Constitutional Challenge is Neither Novel Nor As Applied ........................................................................ 23

      1.    There Is No "Bifurcated" Election-Cycle Contribution Limit ........................................................................... 23

      2.    *McCutcheon* Does Not Support Contributors' Imagined $5,200 Election-Cycle Contribution Limit ......... 27

      3.    The District Court Correctly Concluded That This Is Not An As-Applied Challenge ........................................... 30

C.    The District Court Correctly Concluded That Supreme Court Precedent Forecloses Contributors' Claimed Right to Make General-Election Contributions in Amounts That Are Double FECA's Per-Election Limit ........................................................ 32

D.    Contributors' Alleged Harm Was Not Caused by FECA ............ 34

      1.    Contributors' Choice Not to Make Primary-Election Contributions Is Not a Constitutional Injury ..................... 34

      2.    An FEC Regulation That Permits General-Election Candidates to Spend Unused Primary Contributions on General-Election Expenses Did Not Unconstitutionally Burden Holmes or Jost ........................................................ 35

III.   THE DISTRICT COURT PROPERLY REJECTED CONTRIBUTORS' FIFTH AMENDMENT EQUAL PROTECTION CHALLENGE ......... 37

A.    The District Court Correctly Held That Contributors' Equal Protection Challenge Is Foreclosed by *Buckley* ............................ 37

B.    No Case Supports Contributors' Equal Protection Claims ........... 43

ii

C.      The Per-Election Contribution Limit Easily Satisfies the
Applicable Level of Constitutional Review ................................. 46

IV.      CERTIFICATION WAS CLEARLY UNWARRANTED .................... 49

CONCLUSION ................................................................................................ 63

# TABLE OF AUTHORITIES

*Cases*

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
131 S. Ct. 2806 (2011)............................................................. 45

*Armour v. City of Indianapolis*, 132 S. Ct. 2073 (2012) ................................... 47

*Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740 (D.C. Cir. 2000) ................... 20

*Bread Political Action Comm. v. FEC*, 455 U.S. 577 (1982)............................ 51

*Buckley v. Valeo*, 387 F. Supp. 135 (D.D.C. 1975) ........................................ 51

*\*Buckley v. Valeo*, 424 U.S. 1 (1976) ...................................... 4, 5, 21, 38, 39, 48

*\*Cal. Med. Ass'n v. FEC*, 453 U.S. 182 (1981).................................... 50, 52, 53

*Cao v. FEC*, 688 F. Supp. 2d 498 (E.D. La. 2010)..................................... 58, 59

*Citizens United v. FEC*, 558 U.S. 310 (2010)............................................. 22, 40

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).............. 42

*Davis v. FEC*, 554 U.S. 724 (2008) ...................................................... 22, 33, 44

*Edwards v. Dist. of Columbia*, 755 F.3d 996 (D.C. Cir. 2014) ........................ 30

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) ...................................... 38

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993)....................................... 46

*FEC v. Colorado Republican Federal Campaign Committee*,
533 U.S. 431 (2001)........................................................................... 22, 33

\*      Authorities upon which we chiefly rely are marked with asterisks.

*Feinberg v. FDIC*, 522 F.2d 1335 (D.C. Cir. 1975) .................................... 53, 54

*Gifford v. Congress*, 452 F. Supp. 802 (E.D. Cal. 1978).................................. 53

*Gifford v. Tiernan*, 670 F.2d 882 (9th Cir. 1982) ............................................. 53

*Goland v. United States*,
    903 F.2d 1247 (9th Cir. 1990) ........................20, 22, 43, 50-51, 52, 55, 56

*Harris v. McRae*, 448 U.S. 297 (1980) ............................................................. 42

*Heller v. Doe*, 509 U.S. 312 (1993) ................................................................... 47

*In re Cao*, 619 F.3d 410 (5th Cir. 2010) ..................................................... 20, 58

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010).................................................. 30

*Judd v. FEC*, 304 F. App'x 874 (D.C. Cir. 2008) ............................................. 53

*Judicial Watch, Inc. v. United States Secret Serv.*,
    726 F.3d 208 (D.C. Cir. 2013)................................................................. 21

*Khachaturian v. FEC*, 980 F.2d 330 (5th Cir. 1992)............ 22, 51, 59-60, 60, 62

*Libertarian Nat'l Comm., Inc. v. FEC*,
    930 F. Supp. 2d 154 (D.D.C. 2013)....................................... 31-32, 56, 57

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 36

*\*McCutcheon v. FEC*, 134 S. Ct. 1434 (2014) ..................................... 22, 28, 29

*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) ........................ 47

*Nat'l Comm. of the Reform Party of the United States v. Democratic
    Nat'l Comm*, 168 F.3d 360 (9th Cir. 1999) ............................................. 53

*Randall v. Sorrell*, 548 U.S. 230 (2006) .......................................................... 33

*Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014) .............................. 45, 46

*SpeechNow.org v. FEC*, No. 08-0248, 2009 WL 3101036 (D.D.C.
    Sept. 28, 2009) ..................................................................... 62

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) .............................................................. 42

*\*Wagner v. FEC*, 717 F.3d 1007
    (D.C. Cir. 2013) (“*Wagner I*”) ........................................... 12, 49-50, 50, 51

*\*Wagner v. FEC*, 793 F.3d 1 (D.C. Cir. 2015) (“*Wagner II*”) ......... 44-45, 48, 49

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) .............................................................. 31

*Whitmore v. FEC*, 68 F.3d 1212 (9th Cir. 1996) .................................. 51, 53

### Statutes and Regulations

28 U.S.C. § 1331 ....................................................................... 1

28 U.S.C. §§ 1291, 1294(1) ........................................................ 1

Bipartisan Campaign Reform Act of 2002, Pub. L. 107-155, § 307(b), (d),
    116 Stat. 102-103 (2002) ...................................................... 5

Federal Election Campaign Act of 1971, 52 U.S.C. §§ 30101-30146:

    *52 U.S.C. § 30101(1) ......................................................... 4

    52 U.S.C. § 30101(1)(A) ..................................................... 26

    *52 U.S.C. § 30110 ............................................................ 1, 37, 49

    52 U.S.C. § 30116(a) .......................................................... 26

    52 U.S.C. § 30116(c) .......................................................... 6

    *52 U.S.C. § 30116(a)(6) ..................................................... 4

    *52 U.S.C. § 30116(a)(1)(A) ................................................. 4

Federal Election Commission Regulations:

*11 C.F.R. § 100.2(b)(2) ........................................................... 24

*11 C.F.R. § 100.2(c)(1)............................................................ 24

11 C.F.R. § 110.1(b)(2)(i).......................................................... 7

*11 C.F.R. § 110.1(b)(2)(ii) ....................................................... 7

*11 C.F.R. § 110.1(b)(3)(i)......................................................... 7

11 C.F.R. § 110.1(b)(3)(i)(A) & (C), (k)(3) ........................................7-8

11 C.F.R. § 110.1(b)(3)(i)(C) ...................................................... 8

*11 C.F.R. § 110.1(b)(3)(iv)........................................................ 8

11 C.F.R. § 110.1(b)(5)(i)(B) ...................................................... 7

*11 C.F.R. § 110.1(b)(5)(iii) ...................................................... 8

*11 C.F.R. § 110.1(b)(6) ................................................... 33, 36, 39

*11 C.F.R. § 110.3(c)(3)............................................................ 8

Fed. Election Campaign Act Amendments of 1974, Pub. L. No. 93-443,
    § 101(b)(3), 88 Stat. 1263 ..................................................... 3

Fed. Election Campaign Act Amendments of 1974, Pub. L. No. 93-443,
    § 208(A) ...................................................................... 50

FEC, *Price Index Adjustments for Contribution and Expenditure Limitations
    and Lobbyist Bundling Disclosure Threshold*, 78 Fed. Reg. 8530, 8532
    (Feb. 6, 2013)................................................................. 6

### *Miscellaneous*

86 Cong. Rec. 2720 (1940) (statement of Sen. Bankhead) ............................. 3

117 Cong. Rec. 43,410 (1971) (statement of Rep. Abzug) ................................. 3

D.C. Cir. R. 32.1(b)(2) ....................................................................................... 61

## GLOSSARY

FEC  =  Federal Election Commission

J.A.  =  Joint Appendix

FECA  =  Federal Election Campaign Act

BCRA  =  Bipartisan Campaign Reform Act

## COUNTERSTATEMENT OF JURISDICTION

The district court had jurisdiction to review this action for eligibility for certification to the en banc Court of Appeals under 52 U.S.C. § 30110 and, in the absence of such jurisdiction, under 28 U.S.C. § 1331.  On April 20, 2015, the court below entered a final decision denying the motion of appellants Holmes and Jost ("Holmes and Jost" or "Contributors") to certify constitutional questions to the en banc Court of Appeals and granting summary judgment to the Federal Election Commission.  (J.A. 266-310.)  Contributors timely filed a notice of appeal on April 24, 2015.  (J.A. 311.)  This Court has jurisdiction over the appeal under 28 U.S.C. §§ 1291, 1294(1).

## COUNTERSTATEMENT OF ISSUES PRESENTED

**(1)     First Amendment.**  Where the Federal Election Campaign Act ("FECA" or "Act") sets limits on the amount individuals may contribute to a particular federal candidate for a particular federal election, and where the Supreme Court has repeatedly upheld FECA's per-election contribution limit against First Amendment challenges based on the government's important anticorruption interest, did the district court properly reject as settled and insubstantial Contributors' First Amendment challenge to FECA's per-election limit?

1

**(2)     Equal Protection.**  Where FECA imposes the same per-election contribution limit on every individual wishing to contribute to a federal candidate, where the Supreme Court has upheld the per-election limit against a prior equal protection challenge, and where Contributors do not identify any classification by, or discriminatory purpose underlying, the per-election limit, did the district court properly reject as settled and insubstantial Contributors' Fifth Amendment challenge to FECA's per-election limit?

**APPLICABLE STATUTES AND REGULATIONS**

The relevant provisions are included at ADD 1-22 of Appellants' Brief and in a Supplemental Addendum to this brief.

**COUNTERSTATEMENT OF THE CASE**

**I.     STATUTORY AND REGULATORY BACKGROUND**

**A.     Congress's Original Enactment of Per-Year Limits on
        Contributions to Candidates**

Candidate contribution limits have been a principal tool for preventing political corruption in this country for seventy-five years.  (J.A. 270 ¶3.)  In the first half of the twentieth century, Congress grew particularly concerned about corruption arising from contributions to candidate campaigns and political parties. In 1939, Congress passed S. 1871, officially titled "An Act to Prevent Pernicious Political Activities" and commonly referred to as the Hatch Act.  (J.A. 270-71 ¶3 (citing S. Rep. No. 101-165, at *18 (1939)).)  Congress established individual

2

contribution limits in the 1940 amendments to the Hatch Act, which prohibited

"any person, directly or indirectly" from making "contributions in an aggregate

amount in excess of $5,000, during any calendar year" to any federal candidate.

(J.A. 271 ¶3 (internal quotation marks omitted).)  The limit was sponsored by

Senator John H. Bankhead, who stated that "[w]e all know that large contributions

to political campaigns . . . put the political party under obligation to the large

contributors, who demand pay in the way of legislation."  86 Cong. Rec. 2720

(1940) (statement of Sen. Bankhead).

## B.  FECA's Per-Election Limit on Contributions to Candidates

By 1971, when Congress enacted FECA, the $5,000 individual contribution

limit was being "'routinely circumvented.'"  (J.A. 271 ¶4 (quoting 117 Cong. Rec.

43,410 (1971) (statement of Rep. Abzug)); *see* J.A. 271-72 ¶5 (describing

Congressional findings regarding such circumvention).)  In 1974, shortly after the

Watergate scandal, Congress substantially revised FECA, adding to it, *inter alia*, a

$1,000 per-candidate, per-election limit on individual contributions to candidates

and their authorized political committees.  (J.A. 272 ¶6 (citing Fed. Election

Campaign Act Amendments of 1974, Pub. L. No. 93-443, § 101(b)(3), 88 Stat.

1263.)

The contribution limit challenged here applies on a per-candidate, per-

election basis, with "election" defined to include, *inter alia*, general, primary,

3

runoff, and special elections, as well as political party conventions and caucuses. 52 U.S.C. § 30101(1); J.A. 272 ¶8.[1]  FECA's individual contribution limit applies separately for each election, except that all elections held in any calendar year to elect the President (except a general election for such office) are considered a single election.  (J.A. 272-73 ¶8 (citing 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(6)).)

### C.     The Supreme Court's Upholding of FECA's Contribution Limit

Shortly after Congress passed the 1974 FECA amendments, the Supreme Court, in *Buckley v. Valeo*, affirmed the constitutionality of the per-election limit against both First Amendment and Fifth Amendment equal protection challenges. 424 U.S. 1, 29, 35 (1976) (per curiam).  The Court found that a contribution limit only "marginal[ly]" restricts a contributor's First Amendment rights and therefore applied intermediate, or "closely drawn," scrutiny.  *Id.* at 20-21, 25.  The Court upheld FECA's per-election limit under the First Amendment, finding that it furthered the government's important interests in limiting actual and apparent corruption, both of which threaten to undermine "the integrity of our system of representative democracy."  *Id.* at 23-29.  The *Buckley* Court also rejected a Fifth Amendment equal protection challenge to the per-election limit.  The Court

---

[1]     Last year, FECA was moved from Title 2 to Title 52 of the United State Code.  Editorial Reclassification Table, http://uscode.house.gov/editorialreclassification/t52/Reclassifications_Title_52.html.

observed that FECA "applies the same limitations on contributions to all candidates" and stated that "[a]bsent record evidence of invidious discrimination . . . a court should generally be hesitant to invalidate legislation which on its face imposes evenhanded restrictions." *Id.* at 31. The Court explained that "the danger of corruption and the appearance of corruption apply with equal force to challengers and to incumbents" and accordingly found that "Congress had ample justification for imposing the same fundraising constraints upon both." *Id.* at 33.

The *Buckley* Court also found that the then-$1,000 contribution limit was not unconstitutionally overbroad, rejecting an argument that the limit was "unrealistically low," and holding that judicial review of the amount at which limits are set is very narrow. *Id.* at 30. The Court explained that if Congress decides that "some limit on contributions is necessary, a court has no scalpel to probe, whether, say, a $2,000 ceiling might not serve as well as $1,000." *Id.* (internal quotation marks omitted).

### D.    FECA's Current Per-Election Contribution Limit and the Commission's Implementing Regulations

The Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81 ("BCRA"), subsequently amended FECA to raise the per-election limit and index it for inflation. (J.A. 273 ¶9 (citing BCRA § 307(b), (d), 116 Stat. 102-103 (codified at 52 U.S.C. § 30116(c))).) The indexed limit that applied to contributions made to federal candidates during the 2013-2014 election cycle,

5

including the contributions at issue in this case, was $2,600 per candidate, per election.  (*Id.* ¶10 (citing FEC, *Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold*, 78 Fed. Reg. 8530, 8532 (Feb. 6, 2013).)[2]

Because FECA defines "election" to include various types of electoral contests, the total amount that one may contribute to a particular candidate during a particular election cycle depends on how many separate elections that candidate must participate in to pursue the federal office being sought.  (J.A. 273 ¶11.)  As the district court explained, "[t]his means that an individual who supported a candidate who participated in one primary election and one general election during the 2013-2014 election cycle was permitted to contribute a total of $5,200 to that candidate — $2,600 for the candidate's primary-election campaign and $2,600 for the candidate's general-election campaign."  (J.A. 273-74 ¶11.)  "In an election cycle in which a candidate competes in one or more runoffs, special elections, or a political party caucus or convention, in addition to a primary and general election, the total amount that an individual may contribute to that candidate is higher."  (J.A. 274 ¶12.)  As the district court found, appellants' own contributions to Congressman Mark Sanford in connection with three different elections for the same congressional seat in 2013 exemplify how the per-election limit enabled

---

[2]     The limit for the 2015-2016 election cycle is $2,700 per candidate, per election.  (J.A. 273 ¶10.)

individuals to contribute more than $5,200 to the same candidate during the 2013-2014 election cycle.  (J.A. 274-75 ¶¶13-16; *see also* J.A. 281-84 ¶¶40-58 (detailing frequency and identifying specific examples of electoral contests that included runoff and special elections over the past dozen years).)

Commission regulations "encourage[]" contributors to designate in writing the particular election for which an individual contribution is intended.  (J.A. 276 ¶20 (citing 11 C.F.R. § 110.1(b)(2)(i)).)  Undesignated contributions count against the donor's contribution limit for the candidate's next election; designated contributions count against the donor's contribution limit for the named election. (*Id.* ¶21 (citing 11 C.F.R. § 110.1(b)(2)(ii)).)

When a candidate has net debts outstanding from a past election — including a primary election — a contributor may designate a contribution in writing for that past election.  Such contributions may only be accepted for the purpose of retiring debt and only up to the extent of the debt.  (J.A. 276 ¶22 (citing 11 C.F.R. § 110.1(b)(3)(i), (b)(5)(i)(B)).)  If a candidate's net outstanding debts from a past election amount to less than the amount of a contribution designated for a previous election, Commission regulations permit the candidate (or his committee) to refund the contribution, redesignate it (with the donor's written authorization) for a subsequent election, or reattribute the contribution as from a different person if it was intended to be a joint contribution.  (*Id.* ¶23 (citing 11

7

C.F.R. § 110.1(b)(3)(i)(A) & (C), (k)(3)).)  A primary contribution that is
redesignated for use in the candidate's general election counts against the
contributor's general-election limit.  (*Id.* ¶24 (citing 11 C.F.R. § 110.1(b)(5)(iii)
("A contribution redesignated for another election shall not exceed the limitations
on contributions made with respect to that election.")).)  If a primary candidate
fails to qualify for the general election, then all general-election contributions
received by that candidate must similarly be returned, redesignated, or reattributed.
(J.A. 277 ¶25 (citing 11 C.F.R. § 110.1(b)(3)(i)(C)).)

   Commission regulations permit general-election candidates to use any
unused primary contributions to pay for general-election expenses.  (J.A. 277 ¶26
(citing 11 C.F.R. § 110.3(c)(3)).)  General-election candidates are similarly
permitted to use general-election contributions to retire outstanding primary-
election debts.  (*Id.* ¶27 (citing 11 C.F.R. § 110.1(b)(3)(iv)).)  Candidates need not
obtain contributor authorization to make such transfers between their primary,
general, and any other election accounts, and such transfers by candidates do not
change the per-election contribution limit for individual contributors.  (*Id.*)  Past
FEC advisory opinions and enforcement matters illustrate the FEC's application of
these constraints on candidate campaign committees' primary- and general-
election financing.  (*See* J.A. 278-80 ¶¶30-34 (discussing FEC advisory opinions

and enforcement-matter conciliation agreements applying FEC regulations governing primary and general-election financing).)

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Parties

The FEC is the independent agency of the United States with exclusive jurisdiction over the administration, interpretation, and civil enforcement of FECA. (J.A. 270 ¶2.)

Holmes and Jost are a married couple residing in Miami, Florida, who supported certain candidates running in the November 2014 general congressional elections. (J.A. 270 ¶1, 285 ¶61, 286 ¶70.) Holmes and Jost chose not to make any contributions to those candidates' primary-election campaigns. (J.A. 270 ¶62, 286 ¶71.) But Holmes and Jost wished to contribute the maximum amounts permitted for primary and general-election campaigns combined — $5,200 — "entirely for the general election." (*See* J.A. 14 ¶26.) They thus sought to make general-election contributions in amounts that were double FECA's per-election limit. (J.A. 302.)

Holmes supported Carl DeMaio, a candidate who sought to represent California's Congressional District 52. (J.A. 285 ¶61.) Under California's "Top Two" primary system, all candidates for United States congressional offices are listed on the same primary ballot and the two candidates that receive the most

votes, regardless of party preference, proceed to compete in the general election. (J.A. 280 ¶36; J.A. 138-41.)  Four candidates were listed on the ballot for California's June 3, 2014 congressional primary election:  Carl DeMaio, incumbent Representative Scott Peters, and two other candidates.  (J.A. 285 ¶63.) DeMaio and Peters thus each faced three candidates in the primary, including each other.  Ultimately, Peters and DeMaio received the most votes and were the "top two" finishers in the primary.  (J.A. 285 ¶64; J.A. 146.)  DeMaio later lost the general election to Peters.  (J.A. 286 ¶69; J.A. 151.)

Appellant Holmes chose not to make a primary-election contribution to DeMaio but contributed $2,600 to DeMaio's general-election campaign.  (J.A. 285 ¶62; J.A. 286 ¶67.)  Holmes sought to contribute an additional $2,600 to DeMaio's general-election campaign, so that her total contributions in support of DeMaio's general-election campaign would have amounted to $5,200, twice the statutory limit.  (J.A. 286 ¶68.)

Appellant Jost supported Mariannette Miller-Meeks, a candidate who sought to represent Iowa's Second Congressional District.  (J.A. 286 ¶70.)  Miller-Meeks won her 2014 primary election but lost in the general election to incumbent Representative David Loebsack.  (J.A. 287 ¶¶72, 73, 76.)  Jost chose not to make a primary contribution to Miller-Meeks, but contributed $2,600 to her general-election campaign.  (J.A. 286 ¶ 71; J.A. 287 ¶74.)  Jost sought to contribute an

10

additional $2,600 to Miller-Meeks's general-election campaign, so that his total

contributions in support of Miller-Meeks's general-election campaign would have

amounted to $5,200, twice the statutory limit.  (J.A. 287 ¶75.)

### B.  Procedural History

Holmes and Jost filed their complaint challenging FECA's per-election

contribution limit on July 21, 2014 (J.A. 8), and subsequently moved to

preliminarily enjoin the FEC from enforcing FECA's $2,600 per-election limit "as

applied" to their desired $5,200 general-election contributions.

On October 20, 2014, the district court denied Contributors' motion for a

preliminary injunction, finding that they were unlikely to succeed on the merits.

(J.A. 37-51.)  The court explained that their "wish [was] to contribute $5,200 to the

general election alone, as opposed to the $2,600 deemed appropriate by Congress,"

and they therefore challenged "the specific base limit on how much an individual

may contribute per election."  (J.A. 44 n.5.)  The court concluded that such a

challenge is foreclosed by Supreme Court precedent, and that the court did not

have the "luxury" of overruling "*Buckley v. Valeo* and its progeny."  (J.A. 37.)

On November 12, 2014, the district court issued its initial decision on

Contributors' certification request.  The court initially perceived some uncertainty

about whether district courts possess a screening role in cases brought under 52

U.S.C. § 30110 and so, "in an abundance of caution," the court not only made two

11

dozen findings of fact but also certified two constitutional questions for en banc consideration. (J.A. 53.) The Commission filed a motion in this Court for remand, and on January 30, 2015, the en banc Court of Appeals remanded the case to the district court to "complete the functions mandated by section 30110 and described [by this Court] in *Wagner v. FEC*, 717 F.3d [1007, 1009 (D.C. Cir. 2013) (per curiam) ("*Wagner I*")]," *i.e.*, to find facts, determine if any of Contributors' claims were insubstantial, frivolous, or posed settled questions of law; and certify only any unsettled, substantial questions to the en banc Court of Appeals. J.A. 59; *see Wagner I*, 717 F.3d at 1009.

On remand, the parties proposed findings of fact and submitted briefs regarding each others' proposed facts and whether any questions should be certified for en banc consideration.

## C.     District Court Opinion

On April 20, 2015, the district court issued its order and opinion setting forth its findings of fact, declining to certify any constitutional questions, and granting summary judgment to the Commission. (J.A. 266, 310.)

First, the district court made 76 findings of fact. (J.A. 269-287.) The court overruled most of Contributors' relevance and admissibility objections, including

their objections to certain legislative facts, which "'help the tribunal decide questions of law and policy.'" (J.A. 269.)[3]

The court then concluded that Contributors' First and Fifth Amendment claims challenged issues of settled law and rejected as insubstantial their "veiled attack on the contribution limit set by Congress and upheld by the Supreme Court as a legitimate means to combat corruption." (J.A. 266-310.)

The district court explained that section 30110 does not require certification of constitutional questions that are frivolous, insubstantial, or settled. (J.A. 295.) The court further explained that when some factual review is necessary to determine whether a claim is colorable, summary judgment is appropriate regarding any question that is settled or insubstantial. (J.A. 296.)

The district court explained that *Buckley* upheld the then-$1,000 limit on individual contributions to candidates, finding that the limit advanced the sufficiently important state interest of reducing corruption and its appearance. (J.A. 297-98.) The court also explained that the Supreme Court had repeatedly reaffirmed that holding in *Davis v. FEC*, 554 U.S. 724 (2008), *FEC v. Colorado Republican Federal Campaign Committee*, 533 U.S. 431 (2001), and, most

---

[3]      The district court rejected the Commission's arguments and proposed facts concerning the mootness of appellants' claims in light of the passing of the 2014 election. Although Contributors sought to make above-the-limit contributions to certain candidates' 2014 general-election campaigns, the court concluded that their claims were capable of repetition yet evading review. (J.A. 290-94.)

13

recently, in *McCutcheon v. FEC*, 134 S. Ct. 1434 (2014).  (J.A. 298-99.)  In light

of those cases, the court held that Contributors' First Amendment claims involved

an issue of settled law:  "The Supreme Court has held that FECA's individual

limits on base contributions are permissible and Congress set such a limit — at

$2,600."  (J.A. 304-05.)

The district court rejected as a "false construct" Contributors' contention

that their First Amendment claims were novel because the Supreme Court had

never addressed the constitutionality of what they "incorrect[ly]" characterized as a

"bifurcated" $5,200 election-cycle limit.  (J.A. 300.)  The court explained:

> FECA does not dictate a maximum contribution limit of $5,200 that
> may be split between the primary and general elections.  Rather,
> FECA sets a per-election base limit of $2,600:  an individual may
> contribute $2,600 to one candidate for each "election," as defined, in
> which he participates.  Donating $2,600 to a candidate for his
> primary-election campaign and $2,600 to that same candidate for his
> general-election campaign is not the same as donating $5,200 solely
> to his general election campaign.  Congress simply does not allow *any*
> contributor to give $5,200 for a general election.

(*Id.* (citation omitted).)

The court concluded that by seeking to combine the separate $2,600 primary

and general election limits into a single $5,200 limit that could be contributed

solely for a candidate's general-election campaign, Contributors were "effectively

challenging Congress's decision to set a base dollar limit for individual per-

election contributions to federal candidates — a decision that is contemplated and

14

approved by *Buckley*." (J.A. 301.) Contributors' desire to "double the scope" of association with their preferred candidates by contributing $5,200 to those candidates' general-election campaigns was precluded by *Buckley*'s holding that "'the weighty interests served by restricting the size of financial contributions to political candidates are sufficient to justify the limited effect on upon First Amendment freedoms caused by the $1,000 contribution ceiling.'" (*Id.* at 302-03 (quoting *Buckley*, 424 U.S. at 29).)

The court also distinguished the rights of general-election *candidates*, pursuant to an FEC regulation, to spend unused primary contributions on their general-election expenses, from appellants' allegation that certain *contributors* are able to make $5,200 general-election contributions to candidates who faced little or no primary opposition. (J.A. 302.) The court explained that "[n]either FECA nor any Supreme Court opinion authorizes an individual contribution of $5,200 for a general election." (*Id.*) It further explained that Holmes and Jost had not even challenged 11 C.F.R. § 110.3(c)(3), the FEC regulation that permits general-election *candidates* to spend their unused primary contributions on their general-election expenses, and that it is not clear that they would have standing as *contributors* to do so. (*Id.*)

The district court also rejected Contributors' purported reliance on *McCutcheon*, explaining that they had placed "too much weight" on "shorthand"

15

comments delivered by the Court in *dicta*, particularly in light of the Court's

"explicit recognition" elsewhere in the opinion that the base limit is $2,600 per

election.  (J.A. 303.)  *McCutcheon* did not involve a challenge to the base limit, the

court clarified, and it did not "alter *Buckley*'s finding that congressionally-selected

base limits on individual contributions advance an anti-corruption interest."  (J.A.

304.)

　　　　Finally, the district court concluded that Contributors' Fifth Amendment

equal protection claim raised a settled legal question that did not warrant

certification.  (J.A. 305-08.)  The court cited *Buckley*'s rejection of a facial Fifth

Amendment challenge to the per-election limit, and the Supreme Court's

admonition that "a court should generally be hesitant to invalidate legislation

which on its face imposes evenhanded restrictions" in the absence of "record

evidence of invidious discrimination."  (J.A. 305-06.)  Contributors concede that

FECA "'on its face'" treats all contributors the same, and the district court found

"no evidence of invidious discrimination against [them] or any purported class of

individual contributors" by FECA, and concluded that "*Buckley*'s reasoning

applies with equal force" to their Fifth Amendment challenge.  (J.A. 306-08.)

　　　　The district court further explained that even if it had not found

Contributors' claims to be settled, it would have nonetheless found them

"insubstantial and undeserving of certification" because "[t]he facts here make

16

clear that [Contributors'] perceived inequality in contribution limits is not imposed by FECA or its regulations, but the vagaries of the election process." (J.A. 308 n.15 (internal quotation marks omitted).)

## SUMMARY OF ARGUMENT

The decision below is correct and should be affirmed. The district court correctly concluded that Contributors' constitutional challenges to FECA's per-election contribution limit are nothing more than a "veiled attack" on the same "evenhanded" contribution limit that applies to all contributors and candidates and has been repeatedly upheld by the Supreme Court as a legitimate means to combat corruption.

In *Buckley*, the Supreme Court held that FECA's per-election limit satisfies the closely drawn scrutiny that applies to contribution limits, by furthering the government's important interests in preventing actual and apparent corruption while imposing only a "marginal restriction" on the contributor's First Amendment rights. The Supreme Court has reaffirmed that holding a number of times, including in its recent *McCutcheon* decision. The court below correctly relied on those multiple Supreme Court holdings in concluding that Contributors' First Amendment claims are foreclosed.

The court was right to reject Contributors' attempts to escape the dispositive effect of Supreme Court precedent by characterizing their challenges as novel or as

17

applied.  They are neither.  Holmes and Jost merely invent a new, factually

inaccurate, *characterization* of FECA's per-election contribution limit, which they

call a $5,200 "bifurcated" election-cycle limit.  But no such election-*cycle* limit

exists and FECA, which applies to a variety of electoral contests beyond primary

and general elections, does not have a single "bifurcated" limit.  Contributors'

mischaracterization of the provision they challenge does not render these latest

constitutional challenges to the statue "novel."  Nor are their constitutional

challenges as applied, as the district court properly held, because the relief Holmes

and Jost request necessarily reaches beyond their own alleged circumstances.

The district court was also correct in its determination that *Buckley* and other

Supreme Court decisions preclude Contributors from claiming a right to make

general-election contributions in amounts that are double FECA's per-election

limit.  Indeed, Holmes and Jost themselves recognize the general rule that courts

lack a "scalpel to probe" the *amount* of a particular contribution limit where

Congress has determined that a limit is needed.  And they offer no explanation why

that general rule does not apply here.

Contributors' constitutional challenges fail for the additional reason, as the

district court found, that their alleged injury is entirely self-imposed.  Their

admitted efforts to prevent their money from being spent on primary-election

campaigning demonstrate that they chose not to exercise their First Amendment rights, and that such rights were not infringed by FECA.

Finally, the district court's rejection of Contributors' attempt to challenge the same statute under the guise of the Fifth Amendment was sound. FECA's per-election contribution limit applies equally to all persons, creates no classification, and does not invidiously discriminate against anyone. The court below rightly held that Contributors' equal protection claims are foreclosed by *Buckley* and, in any event, are insubstantial because FECA's per-election limit applies to Holmes and Jost in the same way it applies to other contributors. The perceived inequality Holmes and Jost allege is plainly not a result of FECA or even an FEC regulation but rather "the vagaries of the election process."

The district court fulfilled its assigned role under 52 U.S.C. § 30110 of making findings of fact and determining whether any constitutional questions presented are frivolous, insubstantial, or settled. Contributors' challenges here are both insubstantial and pose settled legal questions. The district court correctly declined to certify questions and granted summary judgment to the FEC; its decision should be affirmed.

# ARGUMENT

## I.    STANDARDS OF REVIEW

Contributors do not challenge the district court's factual findings or related evidentiary rulings.  (Appellants' Br. 2, 10, 11.)  Even if they had, however, the district court's findings of fact "may not be set aside unless clearly erroneous." *Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740, 743 (D.C. Cir. 2000).

This Court has not addressed the standard of review that applies to a district court's denial of a request to certify constitutional questions to the en banc Court of Appeals under section 30110.  The Ninth Circuit Court of Appeals has applied a *de novo* standard of review to that determination.  *Goland v. United States*, 903 F.2d 1247, 1252 (9th Cir. 1990) (explaining that where question presented is "whether the caselaw reviewing and interpreting Federal Election Campaign Act amendments disposes of this [section 30110] constitutional challenge," the Court's "review is *de novo*").  The Fifth Circuit, by contrast, has reviewed a district court's dismissal of claims brought pursuant to section 30110 under an abuse of discretion standard.  *In re Cao*, 619 F.3d 410, 415 (5th Cir. 2010) (en banc).  Because the district court's decision should be affirmed under either standard, this Court need not resolve which standard applies here.

20

This Court reviews the district court's summary judgment ruling *de novo*.

*Judicial Watch, Inc. v. United States Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir.

2013).

## II.  THE DISTRICT COURT PROPERLY REJECTED CONTRIBUTORS' FIRST AMENDMENT CHALLENGE

### A.  The District Court Correctly Accepted the Supreme Court's Conclusion That the Government's Important Anticorruption Interest Justifies FECA's Per-Election Contribution Limit

As both the Supreme Court and the court below recognized, contribution

limits "entail[] only a marginal restriction upon the contributor's ability to engage

in free communication" and "may be sustained if the State demonstrates a

sufficiently important interest and employs means closely drawn to avoid

unnecessary abridgment of associational freedoms."  *Buckley*, 424 U.S. at 20-21,

25; J.A. 32 (quoting *Buckley*).  Applying that intermediate level of scrutiny, the

Supreme Court in *Buckley* upheld FECA's per-election limit, explaining that "the

weighty interests served by restricting the size of financial contributions to political

candidates are sufficient to justify the limited effect upon First Amendment

freedoms caused by the $1,000 contribution ceiling."  424 U.S. at 23-29.  "The

Court held that the limits further the important governmental interests of

preventing "the actuality and appearance of corruption resulting from large

individual financial contributions."  *Id.* at 26.

21

As the court below recognized (J.A. 298-99), "the Supreme Court has consistently reaffirmed *Buckley*'s finding" that FECA's per-election contribution limit satisfies constitutional scrutiny.  *See, e.g.*, *McCutcheon*, 134 S. Ct. at 1451 (invalidating FECA's aggregate limits on contributions to candidates while emphasizing that the statute's individual, per-election limit on candidate contributions remains "undisturbed" and that the limit is "the primary means of regulating campaign contributions"); *Davis*, 554 U.S. at 737; *Colo. Republican Fed. Campaign Comm.*, 533 U.S. at 437, 465; *cf. Citizens United v. FEC*, 558 U.S. 310, 359 (2010) (distinguishing independent expenditure restrictions from contribution limits, the latter of which "have been an accepted means to prevent *quid pro quo* corruption").

The district court correctly relied on the Supreme Court's repeated affirmations of the constitutionality of FECA's per-election contribution limit in holding that Contributors' First Amendment claims are foreclosed.  *See, e.g.*, *Goland*, 903 F.2d at 1257 (explaining that "[o]nce a core provision of FECA has been reviewed and approved by the courts, . . . questions arising under [such] 'blessed' provisions understandably should meet a higher threshold" to demonstrate that the challenge is not merely a "sophistic twist" on settled law but rather pose substantial questions warranting certification); *Khachaturian v. FEC*, 980 F.2d 330, 331 (5th Cir. 1992) (en banc) (per curiam) (same).

22

## B.     Contributors' Constitutional Challenge is Neither Novel Nor As Applied

As the court below observed, Contributors have conceded that "*Buckley* forecloses challenges to 'the general imposition of individual contribution limits.'" (J.A. 299-300.)  Holmes and Jost thus attempt to escape the dispositive impact of the Supreme Court's holdings by labeling their claims "novel" and "as applied." (*See, e.g.*, Appellants' Br. 13, 27, 29, 30, 52.)  As the district court's factual findings and legal analysis make clear, such characterizations are completely misplaced.

### 1.     There Is No "Bifurcated" Election-Cycle Contribution Limit

Contributors' "factually incorrect" characterization of the per-election limit as a "bifurcated" election-cycle limit may be "novel," but their legal challenge is not.  (J.A. 300.)  As the court below explained, Holmes and Jost "claim their case is novel because the Supreme Court has not addressed the effect of FECA's 'bifurcated' per-election campaign contribution limit."  (*Id.*)  But Contributors' "*repeated description of FECA's per-election structure as 'bifurcated' is factually incorrect*."  (*Id.* (emphasis added); *see, e.g.*, Appellants' Br. 2, 4, 7, 14, 15, 31, 36, 38, 40 (referencing supposed "bifurcated" per-election limit).)  As the district court clarified, "FECA does not dictate a maximum contribution limit of $5,200 that may be split between the primary and general elections.  Rather, FECA sets a per-

23

election base-limit of $2,600:  an individual may contribute $2,600 to one candidate for each 'election,' as defined, in which he participates."  (J.A. 300.)

As a preliminary matter, FEC regulations and the district court's undisputed factual findings describe the distinct purposes of primary and general elections:  primaries "serve the purpose of determining, in accordance with State law, which candidates are '*nominated* . . . for election to Federal office in a subsequent election.'"  (J.A. 275 ¶17 (quoting 11 C.F.R. § 100.2(c)(1)) (emphasis added).)  General elections, by contrast, are held to "'fill a vacancy in a Federal office . . . and . . . [are] intended to result in the final selection'" of the individual to serve in that office.  (J.A. 275 ¶18 (quoting 11 C.F.R. § 100.2(b)(2).)  FECA's per-election contribution limit logically accounts for these distinctions.

Moreover, and as the district court's detailed factual findings also demonstrate, "FECA's separate contribution limits for each election within a particular election cycle account for the lack of uniformity in federal electoral contests — including the races within different political parties for the same particular office."  (J.A. 280 ¶35.)  The lack of such electoral uniformity is amply demonstrated in the district court's factual findings, including, *inter alia*, the regular occurrence of primary runoff elections in ten states under varying circumstances, open primary elections in other states, and special elections in various special circumstances including when necessary to fill a seat vacated by an

24

incumbent who left office before completing his or her full term. (*See* J.A. 280-84

¶¶35-58 (detailing frequency and identifying specific examples of electoral

contests that included runoff and special elections over the past dozen years).)

FECA's per-election contribution limit thus sensibly permits a candidate

who must participate in a primary, runoff, and general election within a single

election cycle to receive a greater number of contributions from a particular

contributor during that election cycle than candidates who participate only in a

primary and general election. (*See* J.A. 274 ¶12.) As the district court explained

when it denied Contributors' preliminary injunction motion, FECA's imposition of

limits on a per-election basis "allow[] candidates to compete fairly in each stage of

the political process." (J.A. 44 (citing *Buckley*, 424 U.S. at 26-27).)

The per-election limit also allows individuals to associate with a particular

candidate in each of the elections in which the candidate competes, while at the

same time permitting individuals like Holmes and Jost to choose *not* to associate

with a candidate in connection with a particular election. J.A. 285 ¶62, 286 ¶71;

*see* J.A. 43 (denying preliminary injunction and explaining that Contributors'

choice "not to exercise their right of free expression before the primary election

does not render the law unconstitutional as applied"); *infra* pp. 34-35.

Contributors' persistent characterization of FECA's per-election

contribution limit as "bifurcated" is contrary not only to the plain language of the

challenged statutory provision, but also to the detailed, undisputed factual record in this case, as described above, and even to Contributors' own arguments and actions.

Contributors themselves proposed factual findings acknowledging that "[*u*]*nder the text of FECA as amended, the individual contribution limits apply separately with respect to each election*," and that "*in 2014*, individual persons *could* contribute no more than $2,600 per candidate, per federal election," with election defined to include "'a general, special, primary, or runoff election.'" J.A. 61-62 ¶¶3-5; *see* 52 U.S.C. §§ 30101(1)(A), 30116(a). In addition, during the 2013-2014 election cycle, Holmes and Jost each contributed the maximum permissible $2,600 to Congressman Mark Sanford in connection with three separate elections for the same office, including two special elections and one primary election in which Sanford competed unopposed. (J.A. 274-75 ¶¶13-16.) Appellants' respective total contributions of $7,200 each to Congressman Sanford during the 2013-2014 election cycle would have been illegal under their own interpretation of FECA as imposing a $5,200 ceiling on contributions during that election cycle.[4]

---

[4] The closest Holmes and Jost come to even acknowledging this fundamental flaw in their "bifurcation" argument is their observation (Appellants' Br. 6) that "the majority of such races" are primary and general elections. But merely dismissing the broader statutory definition of "election," the district court's detailed factual findings regarding the regular occurrence of other types of election

The district court correctly rejected Contributors' "assertion that there is a $5,200 [election-cycle] cap that is 'bifurcated' between the primary and general[] elections," because that characterization is "a false construct." (J.A. 300.) "The base limit is not $5,200. Congress has decided that the base limit . . . is $2,600, and *Buckley* mandates deference to that limit." (J.A. 301.)

A newly contrived mischaracterization of a provision that the Supreme Court has repeatedly upheld does not render this legal challenge novel. "[S]tripped to the bare facts of their case, [Holmes and Jost] are seeking simply to contribute more than Congress authorized," so the district court properly rejected their specious attempt to escape *Buckley* and its progeny. (J.A. 302.)

> ###### 2. McCutcheon *Does Not Support Contributors' Imagined $5,200 Election-Cycle Contribution Limit*

The Supreme Court's *McCutcheon* decision reaffirmed the constitutionality of FECA's per-election contribution limit and explicitly distinguished that limit

---

contests, and even their own contributions does not fix their deficient legal argument.

    Holmes and Jost employ a similarly dismissive approach in characterizing as a "legal fiction" the notion that a candidate who lacks "a significant primary challenge[r]" or who is "virtually unopposed" still "participates in a primary election." (*Id.* at 4, 6, 15.) That assertion disregards the district court's factual finding that even when a ballot reflects only one candidate, that candidate is "still subject to challenge in most states by potential write-in candidates." (J.A. 284 ¶59; *see* J.A. 162-65.) And it is inconsistent with appellants' own allegations in their complaint invoking the fundraising rights of write-in candidates. (J.A. 21-22 ¶¶58, 60.)

from the *aggregate* contribution limits at issue in that case.  134 S. Ct. at 1451.

Indeed, although the Court ultimately struck down FECA's aggregate limits on the

total amounts that individuals can contribute to all candidates or committees within

a particular time period, the Court explicitly left "undisturbed" the *per-election*

limit at issue here, and emphasized that FECA's *per-election* "limits remain the

primary means of regulating campaign contributions."  *Id.* at 1451.

  *McCutcheon* expressly recognized that FECA's individual "base" limits

apply on a per-candidate, per-election basis.  *Id.* at 1442 ("For the 2013-2014

election cycle, the base limits in the Federal Election Campaign Act . . . permit an

individual to contribute up to $2600 *per election* to a candidate (*$5,200 total for

the primary and general elections*)." (emphases added)); *see id.* at 1448

(explaining that FECA's aggregate limits prevented "an individual from fully

contributing to the *primary and general election campaigns* of ten or more

candidates" (emphasis added)).  Having calculated that the "total" limit on

contributions to a candidate's primary *and* general election campaigns for the

2013-2014 election cycle was $5,200, the Court then proceeded throughout its

opinion to refer collectively to FECA's separate limits for primary and general

election contributions as the Act's "base" limit.

  As the district court explained, these were not constitutional findings about

what level of a per-election limit is "noncorrupting" but merely "shorthand"

28

references to the combined per-election limits in the Court's "dicta" upon which Contributors place "too much weight."  (J.A. 303.)  Nothing in the opinion even hints that Congress or the Court has found that a $5,200 contribution to a single candidate in connection with a single election is "noncorrupting," as Holmes and Jost incorrectly claim (Appellants' Br. 14).

On the contrary, in making clear that *McCutcheon* did "not involve any challenge to the base limits," the Supreme Court stated that it "ha[d] previously upheld [such limits] as serving the permissible objective of combating corruption." 134 S. Ct. at 1442.  The Court thus emphasized, in responding to criticism from the dissenting justices, that the individual, per-election limit remains "undisturbed" and "the primary means of regulating campaign contributions."  *Id.* at 1451.  The Supreme Court's *actual* discussion of FECA's individual per-election limit in *McCutcheon* thus belies Contributors' assertions (Appellants' Br. 14) that the Supreme Court "assumed that Congress had imposed a single contribution limit of $5,200," determined that $5,200 per-election contributions to a single candidate are "noncorrupting," or implied that "there was no justification for preventing an individual from giving that . . . amount" to *any* candidate for a single election.

*McCutcheon* plainly does not support Contributors' arguments, as the district court correctly recognized:  instead, the decision "confirm[s] that FECA's base individual contribution limit is $2,600 per-election."  (J.A. 304.)

29

### 3.    *The District Court Correctly Concluded That This Is Not An As-Applied Challenge*

Holmes and Jost also cannot escape binding precedent by arguing that their challenge is as applied.  In *John Doe No. 1 v. Reed*, the Supreme Court explained that whether a challenge is facial or as-applied depends on the requested relief: "The label is not what matters.  The important point is that plaintiffs' claim and the relief that would follow . . .  reach beyond the particular circumstances of these plaintiffs.  They must therefore satisfy our standards for a facial challenge to the extent of that reach."  561 U.S. 186, 194 (2010); *see also Edwards v. Dist. of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014) (explaining that "the breadth of the remedy" is whether a challenge is facial or as applied).

The court below correctly concluded that the relief sought here demonstrates that this challenge is *not* "as applied." (J.A. 300 n.8; J.A. 306.)  Holmes and Jost seek to "invalidat[e] FECA's per-election individual contribution limit" and such relief would necessarily "'reach beyond the particular circumstances'" alleged here.  (J.A. 306 (quoting *Reed*, 561 U.S. at 194).)  Holmes and Jost fail to explain how a court *could* enjoin enforcement of FECA's per-election limit as applied only to their proposed 2014 general-election contributions, or to some unspecified future contributions to some "candidate who [will] face[] a primary challenge [and

30

then] compete[] in the general election against a candidate who ran unopposed or virtually unopposed during the primary."  (Appellants' Br. 42.)[5]

The Supreme Court has made clear that "a facial challenge must fail where the statute has a plainly legitimate sweep."  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotation marks omitted).  *Buckley* and subsequent Supreme Court decisions establish that FECA's per-election limit has such a "sweep."  The district court correctly found that Contributors' attempt to relitigate the same constitutional question here is foreclosed by the Supreme Court's clear decisions upholding the limit as closely drawn to prevent actual and apparent corruption.  J.A. 267; *see Libertarian Nat'l Comm., Inc. v. FEC*, 930 F. Supp. 2d 154, 166 (D.D.C. 2013) (explaining that a constitutional challenge that "raises issues that the Supreme Court has already

---

[5]     Holmes and Jost also fail to explain how a court could tailor relief to the limited circumstances upon which their claims are purportedly based, *i.e.*, "when a candidate who faces a primary challenge competes in the general election against a candidate who ran unopposed or virtually unopposed during the primary." (Appellants' Br. 42; *see* J.A. 288 n.4 (referencing appellants' former focus on candidates lacking a "substantial primary opponent" rather than one "who ran unopposed or virtually unopposed").)  In the proceedings below, appellants failed to define what circumstances render a candidate "substantially" or, as appellants now define their challenge, "virtually" unopposed.  (J.A. 288 n.4 (finding appellants' attempted categorization irrelevant).)  Appellants' only answer here is to suggest that the FEC should expand its regulatory authority to include determinations regarding the significance of electoral opposition that candidates face in their primary elections.  (Appellants' Br. 42-43 n.14.)  They do not identify any legal basis for such an expansion of the FEC's authority.  *See infra* p. 40 & n.6.

addressed . . . is not so much an as-applied challenge as it is an argument for

overruling a precedent" (internal citation and quotation marks omitted)), *aff'd in*

*part*, No. 13-5094, 2014 WL 590973 (D.C. Cir. Feb. 7, 2014).

### C.    The District Court Correctly Concluded That Supreme Court Precedent Forecloses Contributors' Claimed Right to Make General-Election Contributions in Amounts That Are Double FECA's Per-Election Limit

The district court properly held that *Buckley* and other Supreme Court

decisions foreclose Contributors' desire to "double the scope" of their association

with, and contributions to, their preferred candidates.  (J.A. 302.)  Contributors'

"First Amendment claim challenges FECA's monetary restrictions" — a challenge

"precluded by *Buckley*'s finding that 'the weighty interests served by restricting the

size of financial contributions to political candidates are sufficient to justify the

limited effect upon First Amendment freedoms caused by the [then-]$1,000

contribution ceiling.'"  (J.A. 302-03 (quoting *Buckley*, 424 U.S. at 29).)

As *Buckley* explained, courts lack a "scalpel to probe, whether, say, a $2,000

ceiling might not serve as well as $1,000.  Such distinctions in degree become

significant only when they can be said to amount to differences in kind."  424 U.S.

at 30 (internal quotation marks and citation omitted).  Even Holmes and Jost

recognize this general rule.  (*See* Appellants' Br. 1 ("Lacking 'a scalpel to probe,'

. . . courts will generally defer to the legislature's judgment of the permitted

contribution amount." (quoting *Buckley*)).)  The Supreme Court has repeatedly

reaffirmed it. *See, e.g.*, *Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (Breyer, J.,

plurality) (explaining that courts defer to the legislature on the appropriate *amount*

of contribution limits because courts "cannot determine with any degree of

exactitude the precise restriction necessary to carry out the statute's legitimate

objectives" and "the legislature is better equipped to make such empirical

judgments, as legislators have particular expertise in matters related to the costs

and nature of running for office" (internal quotation marks omitted)); *Colo.*

*Republican Fed. Campaign Comm.*, 533 U.S. at 446 ("[T]he dollar amount of the

limit need not be fine tun[ed] . . . ." (citation and internal quotation marks

omitted)); *cf. Davis*, 554 U.S. at 737 ("When contribution limits are challenged as

too restrictive, we have extended a measure of deference to the judgment of the

legislative body that enacted the law.").

 The only time the Court invalidated an individual, base contribution limit, it

did so largely because the state limits were so low they would "significantly

restrict the amount of funding available for challengers to run competitive

campaigns." *See Randall*, 548 U.S. at 253. Holmes and Jost have not alleged such

circumstances here. Indeed, they are reluctant to fully "relinquish[] control" over

money that they donate to a candidate, and to allow the recipient candidate to

spend such contributions "however [his] campaign chooses." *Compare* J.A. 277

¶28 (citing 11 C.F.R. § 110.1(b)(6)), *with* Appellants' Br. 1; J.A. 285 ¶62, 286

¶71).  That reluctance does not demonstrate any constitutional deficiency with the amount of FECA's per-election limit.  *See infra* pp. 34-37.

### D.     Contributors' Alleged Harm Was Not Caused by FECA

Contributors' claims are not only foreclosed by Supreme Court precedent and premised on a "factually incorrect" characterization of the statutory provision they challenge.  Their claims are also insubstantial for the additional reason that Holmes and Jost have not identified any harm resulting from the statutory contribution limit they purport to challenge.

### 1.     *Contributors' Choice Not to Make Primary-Election Contributions Is Not a Constitutional Injury*

As the district court found, Holmes and Jost both *could have* contributed $5,200 to their preferred candidates — for those candidates' primary and general election campaigns — but they *chose* not to do so.  (J.A. 43, 285 ¶62, 286 ¶71.) Indeed, Holmes and Jost acknowledge in their opening brief that they each elected not to make contributions in primary elections because that is when candidates of the same party ordinarily compete against one another.  (Appellants' Br. 1 (explaining the view that such money would be "wasted in an intraparty squabble"); *see id.* at 7 (explaining that Holmes supported candidate Carl DeMaio and contributed the maximum permissible $2,600 to him for his general election campaign but "did not make any contributions [for DeMaio's primary election

34

campaign] because [Holmes] was interested principally in supporting the ultimate nominee from her party against the incumbent").)

As the district court correctly explained when it denied Contributors' motion for a preliminary injunction, their alleged injuries are thus entirely self-inflicted: Holmes and Jost "could have contributed $2,600 to any candidate before the primaries, but *chose* not to do so because of their belief that the money would be 'wasted in an intraparty squabble' as opposed to being used to fight the incumbent in the general election." (J.A. 43.) Contributors' affirmative choice "not to exercise their right of free expression" by declining to associate with their preferred candidates during those candidates' primary-election campaigns "does not render the law unconstitutional as applied." (*Id.*)

> 2.  *An FEC Regulation That Permits General-Election Candidates to Spend Unused Primary Contributions on General-Election Expenses Did Not Unconstitutionally Burden Holmes or Jost*

The district court sensed Contributors' "frustration" that an FEC regulation permits a general-election candidate to transfer unused primary funds for use in that candidate's general-election campaign. (J.A. 304.) But their disagreement with *the Commission's regulation of how candidates may spend their money* does not demonstrate any constitutional flaw in the *statutory provision governing the amount all individuals may contribute* to a particular candidate for a particular election. (*Id.*) As the district court explained, "[n]either Congress nor the

35

Supreme Court has ever authorized individual *contributors* to give $5,200 to one candidate solely for use in a general election," and "[n]o contributor has control over how a candidate ultimately uses his contribution." (J.A. 304 & n.10 (citing 11 C.F.R. § 110.1(b)(6); emphasis added)).)

In the district court, Holmes and Jost proposed factual findings establishing that their constitutional claims are brought "on the basis of" the FEC regulation authorizing general-election candidates to transfer unused primary funds for use in their general-election campaign. (J.A. 64 ¶11.) But as the court below found, Holmes and Jost "have not [in fact] challenged the regulation in this case, and it is not clear that they have standing to do so" in any case. (J.A. 302 n.11 (citation omitted).)

To demonstrate standing to challenge section 110.3(c)(3), Holmes and Jost would have to show that as *contributors* they have suffered "concrete and particularized" injury "fairly traceable" to those rules, which govern how *candidates* use contributions they have already received. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). But as the district court correctly noted, an individual contributor "relinquishes control over the contribution" once the contribution is made, and "[g]enerally, a recipient candidate and her campaign may spend contributions to the campaign however the campaign chooses." (J.A. 277 ¶28 (citing 11 C.F.R. § 110.1(b)(6)).)

36

In any event, even if Holmes and Jost had attempted to assert a challenge to this FEC regulation, such a challenge could not be brought under the special judicial review provision they have invoked here, a provision limited to questions concerning the "constitutionality of any provision of [FECA]." 52 U.S.C. § 30110.

*     *     *

In sum, Contributors' First Amendment challenge to a provision of law long ago blessed by the Supreme Court is in all aspects insubstantial, and the district court correctly declined to certify it to the en banc Court.

## III. THE DISTRICT COURT PROPERLY REJECTED CONTRIBUTORS' FIFTH AMENDMENT EQUAL PROTECTION CHALLENGE

The district court also correctly concluded that Contributors' Fifth Amendment challenge to FECA's per-election contribution limit is both foreclosed by Supreme Court precedent and too insubstantial to warrant certification to the en banc Court. The limit applies equally to all persons and creates no classifications, does not invidiously discriminate against anyone, and does not deny Holmes, Jost, or anyone else equal protection of the law.

### A. The District Court Correctly Held That Contributors' Equal Protection Challenge Is Foreclosed by *Buckley*

FECA's per-election contribution limit applies equally to all contributors and candidates; it does not establish any separate classes of contributors or candidates. Nor does it invidiously discriminate, as the Supreme Court held in

*Buckley*.  424 U.S. at 31.  The district court thus rightly concluded that *Buckley*

applies with equal force to Contributors' challenge and that their Fifth Amendment

claims were settled.  (J.A. 306-08.)

The "core concern" of the Constitution's equal protection guarantee is

"shield[ing] against arbitrary [government] classifications."  *Engquist v. Or. Dep't*

*of Agric.*, 553 U.S. 591, 598 (2008) (describing scope of Fourteenth Amendment

equal protection guarantee); *see Buckley*, 424 U.S. at 93 ("Equal protection

analysis in the Fifth Amendment area is the same as that under the Fourteenth

Amendment.").  By contrast, statutory provisions that do not create any

classifications whatsoever do not implicate equal protection concerns.

In *Buckley*, the Court rejected an equal protection challenge alleging that

FECA's per-election contribution limit invidiously discriminated between

incumbents and challengers, explaining "at the outset" that "the Act applies the

same limitations on contributions to all candidates."  424 U.S. at 31.  The court

stressed the importance of FECA's application of "the same limitations on

contributions to all candidates regardless of their present occupations, ideological

views, or party affiliations."  *Id.* at 31.  Because such restrictions are

"evenhanded," the *Buckley* Court turned aside the plaintiffs' Fifth Amendment

claim, explaining its reluctance to strike down a facially neutral statute "[a]bsent

record evidence of invidious discrimination against challengers as a class."  *Id.*

38

"[T]he danger of corruption and the appearance of corruption," the Court reasoned, "apply with equal force to challengers and to incumbents." *Id.* at 33. The Court consequently found that "Congress had ample justification for imposing the same fundraising constraints upon both." *Id.*

This case concerns the same "evenhanded" per-election contribution limit that the Court in *Buckley* found imposes "the same limitations on contributions to all candidates." The district court thus correctly recognized that "FECA treats all individual contributors equally by imposing uniform per-candidate, per election contribution limits." (J.A. 306.) Holmes and Jost are simply wrong in suggesting (Appellants' Br. 46) that some contributors can make a $5,200 contribution to a candidate, combining their primary and general-election contributions, "knowing that it will all be used" for the candidate's general-election expenses. As the district court explained, "[n]o contributor has control over how a candidate ultimately uses his contribution." (J.A. 302 n.10 (citing 11 C.F.R. § 110.1(b)(6)).) Indeed, as explained above, *supra* p. 36, the district court's undisputed factual findings establish that an individual contributor "relinquishes control" of his contribution once the contribution is made, and that candidates are generally free to "spend contributions to the campaign however [they] choose[]." (J.A. 277 ¶28 (citing 11 C.F.R. § 110.1(b)(6)).)

Moreover, the vague "implicit[] classifi[cation]" (Appellants' Br. 45) of contributors to which Holmes and Jost claim membership does not implicate equal protection concerns. Holmes and Jost assert that their challenge is based on the alleged "asymmetry posed when a candidate who faces a primary challenge competes in the general election against a candidate who ran . . . *virtually unopposed* during the primary." (*Id.* at 42 (emphasis added).) But as the Commission explained above, *supra* p. 31 n.5, Holmes and Jost admit their inability to define the class to which they purport to belong, suggesting that it is up to the FEC to promulgate regulations that define what circumstances render a candidate "'virtually unopposed.'" (Appellants' Br. 42-43 n.14.) Holmes and Jost fail to explain their bizarre suggestion (*id.*) that the FEC's promulgation of a regulation regarding whether certain communications were functionally equivalent to campaign advertisements demonstrates that the FEC has the legal authority or technical ability to predict a particular candidate's likely degree of opposition in an upcoming election.[6] And Contributors' characterization of their "class" disregards the fact that Scott Peters, the general-election opponent of appellant Holmes's preferred candidate, *was* opposed, under any standard, in his primary election: he

---

[6]    The Supreme Court criticized the previous Commission regulation to which plaintiffs refer as a "two-part, 11-factor balancing test" that chilled speech to such an extent that the facial validity of FECA's corporate expenditure ban needed to be reconsidered. *Citizens United*, 558 U.S. at 335-36. The Constitution does not compel this Court to accept appellants' attempt to put the Act's contribution limits on a similar path.

40

faced *three* primary opponents in the 2014 California congressional primary under California's "Top-Two" system.  J.A. 285-86 ¶¶63-66; *see supra* p. 10.

Since the statute creates no classification, Holmes and Jost cannot show an equal protection violation unless they can show that the law was enacted specifically to further a discriminatory purpose — a task Holmes and Jost do not even purport to undertake.  Instead, they posit "asymmetric" effects and outcomes. (Appellants' Br. 47-48.)  But that claim is both factually inaccurate and legally insufficient to demonstrate an equal protection violation.

First, as *Buckley* makes clear, FECA's per-election contribution limit "'applies the same limitations on contributions to all candidates.'"  (J.A. 307 (quoting *Buckley*, 424 U.S. at 31).)  Contributors' "asymmetric" effects argument appears to be based on their misleading comparison of groups that are not similarly situated — contributors, on the one hand, and candidates, on the other — and on different legal provisions.  Holmes and Jost erroneously compare (Appellants' Br. 1) a general-election candidate's right, pursuant to an FEC regulation, to spend primary contributions "for general election purposes," with a contributor's right, under FECA, to contribute only up to $2,600 to a candidate for a particular election.  Equally erroneous is Contributors' comparison of their *voluntary choice not* to associate with their favored candidates in connection with those candidates' primary-election campaigns (Appellants' Br. 1, 7; J.A. 43, 285 ¶62, 286 ¶71), with

41

the choice of other individuals to exercise their right to make primary contributions (Appellants' Br. 46). "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Contributors' false comparisons of individuals that are not "similarly situated" do not demonstrate any statutory violation of their equal protection rights, nor even the "asymmetric" outcomes Holmes and Jost allege.

Second, even if Holmes and Jost could demonstrate such disparate outcomes, such a demonstration would still be insufficient to assert an equal protection claim. "The equal protection component of the Fifth Amendment prohibits only purposeful discrimination," so "when a facially neutral federal statute is challenged on equal protection grounds, it is incumbent upon the challenger to prove that Congress selected or reaffirmed a particular course of action at least in part *because of*, not merely in spite of, its adverse effects upon an identifiable group." *Harris v. McRae*, 448 U.S. 297, 323 n.26 (1980) (internal quotation marks and citation omitted) (emphasis added); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (requiring evidence of "discriminatory intent or purpose . . . to show a violation of the Equal Protection Clause"). The district court thus correctly rejected as insufficient Contributors' "disparate impact" argument. (J.A. 308.)

42

The statute creates no classifications and there are no allegations, let alone any factual findings, even suggesting any discriminatory purpose.  The district court thus correctly concluded that "*Buckley*'s reasoning applies with equal force here," and forecloses Contributors' similar attempt to bring an equal protection to FECA's "'evenhanded'" per-election contribution limit.  J.A. 306-08; *see Goland*, 903 F.2d at 1253, 1258 (explaining that constitutional questions are "settled" if they "do not fall outside the principles" established by the Supreme Court, even if the Court "did not have in mind" the plaintiffs' exact circumstances).

Contributors' argument (Appellants' Br. 43-44) that *Buckley* is not dispositive because no court has considered an equal protection challenge to the "bifurcated" limit is unavailing for all of the same reasons that their reliance on that "factually incorrect" characterization of the statute is fatal to their First Amendment claims:  as explained in detail above, there is no "bifurcated" limit.

### B.    No Case Supports Contributors' Equal Protection Claims

None of the cases cited by Holmes and Jost (Appellants' Br. 47-51) demonstrate that their equal protection claim is substantial.  *Davis v. FEC*, *Arizona Free Enterprise Club PAC v. Bennett*, and *Riddle v. Hickenlooper* are all inapposite because the provisions at issue in those cases actually created separate contributions limits for similarly situated persons or burdened the free speech of

43

privately funded candidates for the purpose of leveling the financial playing field. The per-election limit challenged here does neither of those things.

In *Davis*, the Court considered First and Fifth Amendment challenges to BCRA's Millionaires' Amendment, which allowed the opponents of candidates who personally spent more than $350,000 to receive individual contributions at three times the usual limit. The Court viewed the provision as an expenditure limitation and held that it violated the First Amendment by "impos[ing] an unprecedented penalty on any candidate who robustly exercises that First Amendment right [by spending personal funds, and] requir[ing] a candidate to choose between the First Amendment right to engage in unfettered political speech and subjection to discriminatory fundraising limitations." 554 U.S. at 739. The Court further explained that, even viewed as a contribution limit, the purpose of the provision to level electoral opportunities was impermissible. *Id.* at 740 n.7. But FECA's per-election contribution limit at issue here does not suffer from such constitutional infirmities: it is not asymmetrical, does not burden any candidate's right to expend personal funds, and is based on the permissible justification of preventing the risk and appearance of corruption. Further, the Court in *Davis* declined to reach the equal protection issue in light of its First Amendment analysis. *Id.* at 744 n.9; *accord Wagner v. FEC*, 793 F.3d 1, 32-33 (D.C. Cir. 2015) (en banc) ("*Wagner II*") (rejecting equal protection challenge for the same

44

reasons used in rejecting the same basic claim brought as a First Amendment challenge).

*Arizona Free Enterprise* is similarly inapposite. That case concerned an Arizona statute providing that when a privately financed candidate raised or spent more than the state's initial grant, his or her opponent would receive almost dollar-for-dollar matching funds. Explaining that "the logic of *Davis* largely control[ed]" the result, the Court held that Arizona's provision violated the First Amendment by penalizing candidates who "'robustly exercise[d]'" their First Amendment rights, 131 S. Ct. at 2818-19, and by attempting to level the playing field impermissibly, *id.* at 2825. *Arizona Free Enterprise* hardly casts constitutional doubt on the $2,600 per-election limit at issue here, since, again, FECA's per-election limit was not enacted to (and does not) impermissibly level the playing field; it does not treat any contributors or candidates differently from others.

*Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014), also fails to support Contributors' claims. In *Riddle*, the Court of Appeals for the Tenth Circuit considered a Colorado statute that, as a result of the state's procedure for determining which candidates may appear on the general election ballot, allowed major-party candidates to "obtain $400 from a single contributor and spend all of the money in the general election," while restricting minor-party nominees and others to obtaining "only $200 from a single contributor." 742 F.3d at 924-27.

45

Importantly, the challenged Colorado provision did "*not* set contribution limits based on who has a primary and who doesn't." *Id.* at 926. The Tenth Circuit found that the law "created different contribution limits for candidates running against each other, and these differences have little to do with fighting corruption." *Id.* at 930. It thus invalidated the Colorado provision on equal protection grounds. *Id.* That holding is inapposite here. As Judge Gorsuch noted in his concurring opinion, "[t]he federal government regulates campaign contributions on a per-election basis and manages to do so without any of the discrimination found in Colorado statutory law." *Id.* at 933 (Gorsuch, J., concurring); *see id.* (suggesting that "[p]erhaps the State might follow th[e federal] model" to cure the constitutional deficiencies of the Colorado provision).

### C.    The Per-Election Contribution Limit Easily Satisfies the Applicable Level of Constitutional Review

Even if the limit could be deemed to create some sort of de facto "class" of contributors — and as explained above, it cannot — such a classification would be subject to nothing more than the most deferential standard of review. Under Fifth or Fourteenth Amendment equal protection standards, "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-15 (1993); *see*

46

*also, e.g.*, *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012) ("This Court has long held that a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." (internal quotation marks omitted)); *Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (same); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461 (1981) (same).

The amorphous classification Holmes and Jost have posited is neither suspect nor quasi-suspect, and they have offered nothing suggesting otherwise. Indeed, whether a contributor falls within appellants' vaguely defined class depends wholly on the affirmative choices of individuals — about *which candidates* to support, *when* to support them, and in *which races* — that are beyond the control of the government and do not implicate equal protection guarantees.

Holmes and Jost are also incorrect in suggesting (Appellants' Br. 46) that their claims implicate a "fundamental right" meriting heightened review. They purport to seek only to "structure" certain candidate contributions in a manner that allows them to associate only with their preferred candidates during those candidates' primary-election campaigns, while increasing their general-election contributions to such candidates to an amount that is double the statutory limit for

47

a single election.  But no case has recognized a "fundamental right" to *structure* candidate contributions in whatever manner a contributor desires, and the Supreme Court has made clear that there is no fundamental right to make contributions in whatever *amount* a contributor desires.  *E.g.*, *Buckley*, 424 U.S. at 23-29; *see supra* p. 22.

This Court recently confirmed, en banc, that plaintiffs cannot obtain more scrutiny for a constitutional challenge to a statutory contribution limit by "dressing their [First Amendment] argument as an equal protection claim."  *See Wagner II*, 793 F.3d at 32.  In *Wagner II*, the Court relied on its First Amendment analysis upholding the challenged contribution limits — which *did* impose restrictions on a particular class of contributors — and declined to reach a different result under the Fifth Amendment.  *Id.* at 33 (explaining that "[a]lthough equal protection analysis focuses upon the validity of the classification rather than the speech restriction, the critical questions asked are the same" (internal quotation marks omitted)).  As the Court explained, "in a case like this one, in which there is no doubt that the interests invoked in support of the challenged [provision] are legitimate, and no doubt that the [statute] was designed to vindicate those interests rather than disfavor a particular speaker or viewpoint, the challengers 'can fare no better under the Equal Protection Clause than under the First Amendment itself.'"  *Id.* (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 55 n.4 (1986)).  Holmes and

48

Jost are correct that *Wagner II* is distinguishable (Appellants' Br. 51-52), but not for the reasons they suggest. In *Wagner II*, unlike here, the challenged contribution limit actually created a classification — government contractors — and it *prohibited* (and still prohibits) individuals within that class from making any contributions. *Wagner II*, 793 F.3d at 3. The fact that the Court in *Wagner II* nevertheless unanimously rejected an equal protection challenge to FECA's ban on any contributions by government contractors only further suggests the insubstantiality of Contributors' attempt to relitigate FECA's evenhanded per-election contribution limit here.

## IV.    CERTIFICATION WAS CLEARLY UNWARRANTED

The analysis above demonstrates that the district court correctly determined that Contributors' constitutional claims seek to relitigate settled questions of law, necessarily depend on a "factually incorrect" premise, and fail to identify any substantial and unsettled legal questions that warrant consideration by the en banc Court.

FECA's special judicial review provision, 52 U.S.C. § 30110, provides special procedures for certain plaintiffs to bring suits "to construe the constitutionality of any provision of [FECA]," and for the district court to make findings of fact and certify substantial, unsettled questions of constitutionality of the Act to the appropriate court of appeals sitting en banc. *See Wagner I*, 717 F.3d

49

at 1009.  This certification procedure was enacted in 1974 to provide expedited

consideration of anticipated constitutional challenges to the extensive amendments

made to FECA that year.  *See* Fed. Election Campaign Act Amendments of 1974,

Pub. L. No. 93-443, § 208(A), 88 Stat. at 1285-86 (1974).

The district court in section 30110 cases plays an important gatekeeping role

of preventing insubstantial, frivolous question from unnecessarily disrupting the

work of the en banc federal courts of appeals.  Section 30110 claims are

"circumscribed by the constitutional limitations on the jurisdiction of the federal

courts."  *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981) ("*Cal. Med.*").

This Court has explained that a district court under section 30110 "should perform

three functions.  First, it must develop a record for appellate review by making

findings of fact."  *Wagner I*, 717 F.3d at 1009.  "Second, [it] must determine

whether the constitutional challenges are frivolous or involve settled legal

questions," *id.* (internal citations omitted), or as the Supreme Court phrased it,

whether the issues presented are "neither insubstantial nor settled," *Cal. Med.*, 453

U.S. at 192 n.14.  And third, only then should it certify the record and any non-

frivolous, unsettled constitutional questions to the en banc Court.  *Wagner I*, 717

F.3d at 1009.

The court below thus correctly recognized that certification is not required

for claims that "are either 'insubstantial' or 'settled.'"  J.A. 295; *see also Goland*,

903 F.2d at 1258 ("[W]here the legal issue has been resolved by the Supreme

Court, the district court need not certify the constitutional challenge[s]."); *Buckley*

*v. Valeo*, 387 F. Supp. 135, 138 (D.D.C. 1975) (section 30110 certification

appropriate where "a *substantial* constitutional question is raised by a complaint"

(emphasis added)), *remanded on other grounds*, 519 F.2d 817 (D.C. Cir. 1975);

*Khachaturian v. FEC*, 980 F.2d 330, 332 (5th Cir. 1992) (en banc) (per curiam)

(explaining that only "colorable constitutional issues" should be certified).

The Supreme Court has narrowly construed section 30110 and assigned the

district court this gatekeeping function for good reason:  Certifying constitutional

questions to en banc courts necessarily disrupts their dockets by creating "a class

of cases that command the immediate attention of . . . the courts of appeals sitting

en banc, displacing existing caseloads and calling court of appeals judges away

from their normal duties."  *Bread Political Action Comm. v. FEC*, 455 U.S. 577,

580 (1982).[7]

Screening for insubstantial, frivolous, and settled questions reduces "the

burden [that the special review procedure places] on the federal courts" and

---

[7]    Part of the Supreme Court's concern in *Bread Political Action Committee*
was the requirement in the statute at that time that section 30110 proceedings be
expedited.  455 U.S. at 580.  Though the expedition provision has been repealed,
section 30110 "continues to pretermit review by district courts and panels of courts
of appeals and that pretermission undoubtedly serves the Congress's goal of
expedition."  *Wagner I*, 717 F.3d at 1014 (noting that expedition repeal changed
only section 30110's "volume, not its tune").  It thus continues to pose a danger of
docket disruption.

prevents its "potential abuse." *Cal. Med.*, 453 U.S. at 192 nn.13-14. Substantiality

screening was one of the "restrictions on the use of" the special procedure that led

the Court to conclude that the provision would not so "burden" the courts of

appeals as to impede "the sound functioning of the federal courts." *Id.* at 192-94

nn.13-14. FECA "is not an unlimited fountain of constitutional questions." *Id.* at

192 n.13.

Courts have offered significant guidance about what constitutes a frivolous,

insubstantial, or settled question of law that does not merit certification under

section 30110. Settled questions "do not fall outside the principles" established by

the Supreme Court, even if the Court "did not have in mind" the plaintiffs' exact

circumstances. *Goland*, 903 F.2d at 1253, 1257-58. "Constitutional challenges to

FECA are frivolous for purposes of certification if none of the legal points are

arguable on their merits." *Whitmore v. FEC*, 68 F.3d 1212, 1215-16 (9th Cir.

1996) (internal quotation marks omitted); *id.* (finding challenge frivolous where

"[p]laintiffs have . . . found no published precedent in any judicial decision for

their novel propositions"); *see also* J.A. 295-96 (collecting cases). In the

analogous context of the substantiality standard for determining whether a three-

judge court should be convened under 28 U.S.C. §§ 2282 and 2284, this Court has

explained that "[c]onstitutional claims may be regarded as insubstantial if they are

'obviously without merit,' or if their 'unsoundness so clearly results from the

52

previous decisions of (the Supreme Court)." *Feinberg v. FDIC*, 522 F.2d 1335, 1339 (D.C. Cir. 1975); *accord* Appellants' Br. 12.

Federal courts have routinely refused to certify frivolous or settled constitutional claims pursuant to section 30110. *See, e.g.*, *Judd v. FEC*, 304 F. App'x 874, 875 (D.C. Cir. 2008) (per curiam) (affirming district court's dismissal because "the constitutional challenge to [FECA] is frivolous"); *Nat'l Comm. of the Reform Party of the United States v. Democratic Nat'l Comm*, 168 F.3d 360, 367 (9th Cir. 1999) (affirming district court's decision denying certification of claims that FECA "unconstitutionally preempts common law remedies . . . because plaintiffs had no common law remedies for FECA to preempt"); *Whitmore*, 68 F.3d at 1215-16 (affirming denial of certification for frivolousness where "plaintiffs sought an injunction commanding competing congressional candidates not to accept out-of-state contributions"); *Gifford v. Congress*, 452 F. Supp. 802, 810 (E.D. Cal. 1978) (refusing to certify constitutional questions and dismissing FECA challenge on the "ground that it is frivolous" (cited with approval in *Cal. Med.*, 453 U.S. at 192 n.14), *approved*, *Gifford v. Tiernan*, 670 F.2d 882 (9th Cir. 1982)). The district court's decision not to certify any of Contributors' claims finds robust support in these numerous cases.

Holmes and Jost acknowledge that the district court's gatekeeping functions are "important," but they nevertheless attempt to minimize the scope of the district

court's screening role by reinterpreting the admittedly "straightforward" test that provides for dismissal of cases that are "'frivolous *or* involve settled legal questions.'" (Appellants' Br. 18 (quoting *Wagner I*, 717 F.3d at 1009) (emphasis added); *see id.* at 12, 23 (invoking three-judge court standard described in *Feinberg* but omitting portion of that standard excluding from three-judge court jurisdiction "[c]onstitutional claims . . . that are 'obviously without merit,'" 522 F.2d at 1339).) According to Holmes and Jost, despite the "straightforward" language in this Court's and other courts' opinions describing the district court's duty to screen out such cases, the standard is actually much narrower, requiring certification unless a case is *both* frivolous and raises settled legal issues, and only where "a case has already been definitively decided." (Appellants' Br. 18-19.) Contributors' reinterpretation of the relevant inquiry under section 30110 — "whether *the specific facts and legal claims* . . . present a novel application of law that has not been ruled upon by the Supreme Court" (*Id.* at 29) — would require certification of virtually every case brought under that provision. But Holmes and Jost have no authority for their expansive interpretation of the scope of questions that would merit en banc review, and the body of caselaw interpreting and applying section 30110, upon which the district court appropriately relied (J.A. 294-96), belies their argument.

54

For example, in *Goland*, the plaintiff challenged the constitutionality of FECA's contributions limits and disclosure provisions, alleging that they violated his First Amendment right to contribute anonymously. 903 F.2d at 1252. The Ninth Circuit Court of Appeals concluded that the proposed constitutional questions "d[id] not fall outside the principles established in the cases upholding FECA's contribution limits and disclosure requirements," and thus affirmed the district court's denial of certification — even though the proposed constitutional questions were "in a sense . . . novel" and based on "unusual facts." *Id.* at 1253. The court rejected the argument that the Supreme Court in *Buckley* did not consider questions concerning anonymous contributions to minor party candidates. "The issues Goland raises," the court explained, "were resolved by the Court in *Buckley*, and no feature of his admittedly distinctive factual situation distinguishes his case." *Id.* at 1258. The court explained that *Buckley* had approved the application of contribution limits to minor party candidates and those limits served to deter corruption even as applied to anonymous contributions. *Id.* at 1259. Though *Buckley* had not explicitly considered the precise issue of anonymous contributions, the Ninth Circuit nevertheless affirmed.

*Goland* demonstrates the propriety of the district court's dismissal here of Contributors' similar attempt to challenge settled legal questions. If anything, dismissal here was even more clearly warranted because the only novelty in

Contributors' case is their "factually incorrect" characterization of FECA's per-election contribution limit as a "bifurcated" election-cycle limit.  In any event, *Goland* makes clear that it is not necessary for the Supreme Court to have considered and ruled upon the exact same "specific facts and legal claims" for a district court to properly decline certification in light of "principles established" by the Court.  903 F.2d at 1253.

The district court's decision in *Libertarian National Committee v. FEC*, 930 F. Supp. 2d 154 (D.D.C. 2013) ("*LNC*"), *aff'd in part*, No. 13-5094, 2014 WL 590973 (D.C. Cir. Feb. 7, 2014), stands for the same proposition.  In *LNC*, the district court found that plaintiffs' broad First Amendment challenge to annual limits on contributions to political party committees, as applied specifically to testamentary bequests, was foreclosed by *Buckley*, even though the Supreme Court had not squarely addressed bequests in that decision (or any other).  *Id.* at 165-66. The court explained that bequests generally "may very well raise the anti-corruption concerns that motivated the *Buckley* and *McConnell* Courts to dismiss a facial attack on contribution limits."  *Id.* at 166.  Even though neither of those cases analyzed contribution limits in the specific context of bequests, the court declined to certify given broadly governing Supreme Court authority.

It is true, as Holmes and Jost observe (Appellants' Br. 28-29), that the court in *LNC* reframed the constitutional question plaintiffs had proposed in order to

56

certify a "valid, narrower" question regarding the specific bequest at issue in that case. *LNC*, 930 F. Supp. 2d at 171. The district court noted that specific factual circumstances in that particular case suggested that the anticorruption interests may have been minimal, including not only that the bequestor had died, but also that the recipient had virtually no contact with the bequestor before he died or with his heirs or representatives after his passing. *Id.* at 170-71. Assuming that certification was correct,[8] here there is no "valid, narrower" question the district court could have certified (and Holmes and Jost have yet to identify one).

The question certified in *LNC* concerned the constitutionality of limits on a particular contribution in completely aberrant circumstances, a question that neither the Supreme Court nor any other court had specifically addressed. Here, however, Holmes and Jost pose no unique circumstances whatsoever with respect to reducing the danger of corruption and its appearance. The double-the-limit general-election contributions Holmes and Jost sought to make in 2014 would implicate precisely the same corruption concerns as excessive contributions made by any other contributors, including contributors who *did* make primary contributions.

---

[8]     The matter became moot and the en banc Court of Appeals did not review the certified question. Order, *Libertarian National Committee v. FEC*, No. 13-5094 (D.C. Cir. Mar. 26, 2014) (Document #1485531).

*Cao v. FEC*, 688 F. Supp. 2d 498 (E.D. La. 2010), also supports the

Commission's position, not Contributors'.  In *Cao*, the district court declined to

certify several proposed constitutional questions involving various contribution

and coordinated expenditure limits applicable to political parties that failed to

satisfy the threshold substantiality inquiry.  The court rejected as frivolous two

proposed constitutional questions that were premised on an erroneous theory that

"*all* campaign finance regulations are subject to an 'unambiguously campaign

related' requirement."  *Cao*, 688 F. Supp. 2d at 535-39.  Because the district court

determined that the plaintiffs' legal theory was meritless, it concluded that their

proposed constitutional questions premised on that theory were frivolous and

refused to certify such questions.  *Id.* at 538-39.  The Fifth Circuit affirmed those

decisions.  *In re Cao*, 619 F.3d 410, 418-19 (5th Cir. 2010) (en banc).

The constitutional challenges in this case are even more fundamentally

flawed, including (a) Contributors' mischaracterization of FECA's per-election

contribution limit as a "bifurcated" election-cycle limit, *see supra* pp. 23-27,

(b) Contributors' attempt to transform *McCutcheon*'s shorthand *description* of the

combined primary and general-election contribution "base limit" as a constitutional

holding that a $5,200 per-election contribution is "non-corrupting" and

constitutionally permissible, *see supra* pp. 27-29, (c) Contributors' self-inflicted

58

harm, and (d) their false comparisons of individuals that are not similarly situated, *see supra* pp. 41-42.

Moreover, contrary to Contributors' suggestion (Appellants' Br. 24-25), the *Cao* court's certification of a question related to the $5,000 limit on contributions from political committees to candidates, 52 U.S.C. § 30116(a)(2)(A), does not support certification of any constitutional questions here. In *Cao*, the district court found that earlier Supreme Court decisions had not dealt directly with contributions from political parties, and in particular a claim that limits on contributions from party committees should be higher than limits from other persons. 688 F. Supp. 2d at 547. Here, by contrast, Holmes and Jost challenge FECA's per-election contribution limit based on their desire to make double-the-limit general-election contributions, and the Supreme Court in *Buckley did* squarely uphold the per-election limit on contributions from individuals to candidates. (J.A. 267.)

The Fifth Circuit's decision in *Khachaturian*, which Holmes and Jost acknowledge (Appellants' Br. 26) is "instructive," further confirms that the district court was correct to dismiss Contributors' constitutional challenges here. Khachaturian, an independent candidate in the 1992 senatorial election in Louisiana, brought a lawsuit challenging FECA's then-$1,000 individual contribution limit "as applied" to his independent candidacy. *Khachaturian*, 980

59

F.2d at 331.  After the district court denied his motion for a preliminary injunction and then certified constitutional questions pursuant to section 30110, the FEC moved for a remand.  The Fifth Circuit granted the FEC's remand motion, instructing the district court to perform the frivolousness screening and, if necessary, the record-building functions required in section 30110 cases.  *Id.* at 332.

Holmes and Jost conflate (Appellants' Br. 26) the Fifth Circuit's decision concluding that the district court's initial certification order was premature and remanding the case to the lower court, *Khachaturian*, 980 F.2d at 331, with the district court's unpublished decision, on remand, dismissing the case as frivolous. *Compare* Appellants' Br. 26 (suggesting that the Fifth Circuit determined, in the absence of any record, that Khachaturian failed to distinguish his claims from the claims rejected in *Buckley* and that "[a]s a result . . . certification was properly declined"), *with Khachaturian*, 980 F.2d at 332 (remanding the case for briefing on the certification question and a possible evidentiary hearing so that the *district court* may determine "whether Khachaturian's claim is frivolous in light of *Buckley*").

Holmes and Jost agree (Appellants' Br. 27) that "certification was properly declined" in *Khachaturian*.  In the district court decision making that determination, the court recognized that frivolous questions must not be certified

60

and thus considered Khachaturian's contention that FECA's individual

contribution limit "'had a serious adverse effect on the initiation and scope of his

candidacy.'"  *See Khachaturian v. FEC*, No. 92-3232, slip op. at 4-5 (E.D. La.

May 6, 1993) (unpublished) (Supplemental Addendum at Supp. Add. 7-8.)[9]

Khachaturian had identified eleven contributors prepared to give him more than

$200,000.  (*Id.* at 8.)  The district court explained that *Buckley* had already upheld

FECA's individual contribution limit, "that the statute imposes evenhanded

restrictions," and that "'the impact of the Act's $1,000 contribution limitation on

major-party challengers and minor party candidates does not render the provision

unconstitutional on its face.'"  (*Id.* at 7-8 (quoting *Buckley*, 424 U.S. at 31, 35).)

Because "[t]he law is clear . . . that the $1,000 . . . limit applies to minor party

candidates," and because Khachaturian could "not point to any facts regarding 'the

utility of these additional amounts regarding the election outcome," *i.e.*, "why a

"$200,000 campaign . . . would be any more successful than a $75,000 campaign,"

the district court held that Khachaturian failed "to come even close" to stating a

valid constitutional claim.  (*Id.* at 8-9.)

     Here, the district court correctly dismissed Contributors' constitutional

challenges for the *identical* reason that *Buckley* already "'blessed'" the very same

---

[9]    Although this Court's Rules generally do not permit citations to unpublished district court decisions entered before 2007, D.C. Cir. R. 32.1(b)(2), in this instance, clarification of the *Khachaturian* district court's unpublished decision on remand is necessary in light of appellants' misleading discussion of that case.

per-election contribution limit that Holmes and Jost seek to relitigate.

*Khachaturian*, 980 F.2d at 331.  As the district court in *Khachaturian* explained,

"'[i]t is unnecessary to look beyond [FECA's] primary purpose — to limit the

actuality and appearance of corruption resulting from large individual financial

contributions — in order to find a constitutionally sufficient justification for the

$1,000 contribution limitation.'"  (Supp. Add. 8 (quoting *Buckley*, 424 U.S. at 26).)

The district court's similar conclusion here was correct.  (J.A. 302-03.)

In addition, Contributors' purported "as-applied" twist on the same stale

challenge rejected in *Buckley* and its progeny, based upon the "factually incorrect"

characterization of FECA's per-election contribution limit as a "bifurcated" $5,200

election-cycle limit, is frivolous, just as the independent candidacy twist

Khachaturian attempted over twenty years ago was frivolous.  The district court in

*Khachaturian* refused to recertify the constitutional question *Buckley* had settled,

and the court below correctly refused to do the same.[10]

---

[10]    *SpeechNow.org v. FEC*, which Appellants cite (Appellants' Br. 28), also
does not advance their argument.  Holmes and Jost cite the district court's order
making findings of fact and issuing the court's final determination regarding the
certification of constitutional questions, in which the court stated that its
prerogative was "not to answer any constitutional questions, or to render a
judgment of any kind."  *SpeechNow.org v. FEC*, No. 08-0248, 2009 WL 3101036,
at *1 (D.D.C. Sept. 28, 2009).  But the district court had earlier reviewed briefing
from the parties and determined whether the questions plaintiffs sought to have
certified were frivolous or insubstantial, as discussed in an unpublished order.  *See*
Order, *SpeechNow.org v. FEC*, No. 08-0248 (D.D.C. July 29, 2008) (Docket No.
40).

# CONCLUSION

For the foregoing reasons, the decision below should be affirmed.

Respectfully submitted,

Daniel A. Petalas                           Steve N. Hajjar
Acting General Counsel                      Attorney
dpetalas@fec.gov                            shajjar@fec.gov

Lisa J. Stevenson                           /s/ Charles Kitcher
Deputy General Counsel - Law                Charles Kitcher
lstevenson@fec.gov                          Attorney
                                            ckitcher@fec.gov

Kevin Deeley
Acting Associate General Counsel            FEDERAL ELECTION COMMISSION
kdeeley@fec.gov                             999 E Street, N.W.
                                            Washington, D.C. 20463
Erin Chlopak                                (202) 694-1650
Acting Assistant General Counsel
echlopak@fec.gov                            September 16, 2015

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 13,968 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P 32(a)(6) because the brief uses the proportionally spaced typeface Microsoft Word 14-point Times New Roman.

/s/ Charles Kitcher
Charles Kitcher
Attorney
Federal Election Commission

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2015, I electronically

filed the Brief for Federal Election Commission with the Clerk of the United States

Court of Appeals for the D.C. Circuit by using the Court's CM/ECF system.

Service was made on the following through CM/ECF:

Allen Dickerson, Esq.
Tyler Martinez, Esq.
Center for Competitive Politics
124 S. West Street, Suite 201
Alexandria, VA 22314
adickerson@campaignfreedom.org
tmartinez@campaignfreedom.org

I further certify that I also will cause the requisite number of paper copies of

the brief to be filed with the Clerk.

/s/ Charles Kitcher
Charles Kitcher
Attorney
Federal Election Commission

# SUPPLEMENTAL ADDENDUM

# TABLE OF CONTENTS

52 U.S.C. § 30116(a)(6)...................................................................... Supp. Add. 1

52 U.S.C. § 30116(c) ........................................................................ Supp. Add. 1

11 C.F.R. § 110.1(k)(3)..................................................................... Supp. Add. 2

*Khachaturian v. FEC*, No. 92-3232,
     slip op. (E.D. La. May 6, 1993).............................................. Supp. Add. 4

**52 U.S.C. § 30116(a)(6)**.

The limitation on contributions to a candidate imposed by paragraphs (1) and (2) of this subsection shall apply separately with respect to each election, except that all elections held in any calendar year for the office of President of the United States (except a general election for such office) shall be considered to be one election.

**52 U.S.C. § 30116(c)**.  *Increases on limits based on increases in price index.*

(1)    (A)  At the beginning of each calendar year (commencing in 1976), as there become available necessary data from the Bureau of Labor Statistics of the Department of Labor, the Secretary of Labor shall certify to the Commission and publish in the Federal Register the percent difference between the price index for the 12 months preceding the beginning of such calendar year and the price index for the base period.

(B)  Except as provided in subparagraph (c), in any calendar year after 2002 —

(i)  a limitation established by subsections (a)(1)(A), (a)(1)(B), (a)(3), (b), (d), or (h) shall be increased by the percent difference determined under subparagraph (A);

(ii)  each amount so increased shall remain in effect for the calendar year; and

(iii)  if any amount after adjustment under clause (i) is not a multiple of $100, such amount shall be rounded to the nearest multiple of $100.

(C)  In the case of limitations under subsections (a)(1)(A), (a)(10(B), (a)(3), and (h), increases shall only be made in odd-numbered years and such increases shall remain in effect for the 2-year period beginning on the first day following the date of the last general election in the year preceding the year in which the amount is increased and ending on the date of the next general election.

(2)  For purposes of paragraph (1) —

(A)  the term "price index" means an average over a calendar year of the Consumer Price Index (all items — United States city average) published monthly by the Bureau of Labor Statistics; and

(B)  the term "base period" means —

          (i)  for purposes of subsections (b) and (d), calendar year 1974; and

          (ii)  for purposes of subsections (a)(1)(A), (a)(1)(B), (a)(3), and (h), calendar year 2001.

## 11 C.F.R. § 110.1(k)(3).

      (i)     If a contribution to a candidate or political committee, either on its face or when aggregated with other contributions from the same contributor, exceeds the limitations on contributions set forth in 11 CFR 110.1(b), (c), or (d), as appropriate, the treasurer of the recipient political committee may ask the contributor whether the contribution was intended to be a join contribution by more than one person.

      (ii)    (A)  A contribution shall be considered to be reattributed to another contributor if —

          (1)    The treasurer of the recipient political committee asks the contributor whether the contribution is intended to be a joint contribution by more than one person, and informs the contributor that he or she may request the return of the excessive portion of the contribution if it is not intended to be a joint contribution; and

          (2)    Within sixty days from the date of the treasurer's receipt of the contribution. The contributor provides the treasurer with a written reattribution of the contribution, which is signed by each contributor, and which indicates the amount to be attributed to each contributor if equal attribution is not intended.

(B)    (1)  Notwithstanding paragraph (k)(3)(ii)(A) of this section or any other provision of this section, any excessive portion of a contribution described in paragraph (k)(3)(i) of this section that was made by a written instrument that is imprinted with the names of more than one individual may be attributed among the individuals listed unless a different instruction is on the instrument or in a separate writing signed by the contributor(s), provided that such attribution would not cause any contributor to exceed any of the limitations on contributions set forth in paragraph (b)(1).

          (2)  The treasurer of the recipient political committee shall notify each contributor of how the contribution was attributed and that the contributor may request the refund of the excessive portion of the contribution if is not intended to be a joint contribution.

(3)  Within sixty days from the date of the treasurer's receipt of the contribution, the treasurer shall provide such notification to each contributor by any written method, including electronic mail.



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

MAY 7  II 24 AM '93

LORETTA G. WHYTE

| | |
|---|---|
| JON KHACHATURIAN, ET AL | *    CIVIL ACTION |
| VERSUS | *    NO. 92-3232 |
| FEDERAL ELECTION COMMISSION | *    SECTION "F" |

93 MAY 13 PM 3:33

RECEIVED
FEDERAL ELECTION COMMISSION

### ORDER AND REASONS

Before the Court is the Federal Election Commission's
motion to dismiss. For the reasons that follow, the motion is
GRANTED.

### I. BACKGROUND

The plaintiff, Jon Khachaturian, sought election to the
United States Senate during the recently completed 1992 senatori-
al election in Louisiana.[1] Entering the race one month before
the Louisiana open primary,[2] he requested an advisory opinion
from the Federal Election Committee about whether the statutory
$1000 contribution limit would apply to his independent candida-
cy.[3] Claiming that the contribution limitations were unconsti-

---

[1] The independent candidate ran against a field of four
other candidates; namely, Democrat John Breaux, the incumbent
Senator; Democrat Nick Joseph Accardo; Republican Lyle
Stockstill; and Republican Fred Clegg Strong.

[2] In an "open" primary system, if a candidate garners more
than fifty percent (50%) of the vote in the primary, he is
declared the winner without the need for a general election.
However, if there is no majority winner, the top two finishers
compete in a run-off general election.

[3] Title 2, United States Code, Section 441a governs dollar
limits on political contributions. The statute instructs:

No person shall make contributions to any candidate and
his authorized political committees with respect to any

PROCESS
CHARGE
DKTD
ORDER
HEARING
DOCUME

MAY 1 0 1993

DATE OF ENTRY

Supp. Add. 4

tutional as applied to his campaign, he asked the Commission for
an exemption from the limitations.

Three weeks later, the Commission issued its AO 1992-
35, informing the plaintiff that it lacked jurisdiction to decide
his constitutional challenge. But, the Commission observed, the
United States Supreme Court in Buckley v. Valeo, 424 U.S. 1
(1976), has broadly upheld the $1000 contribution limit against
constitutional challenges from independent and minor party
candidates.

On September 28, 1992, Khachaturian filed suit in
federal district court and moved for immediate certification of
his constitutional questions to the Fifth Circuit for en banc
consideration. He also sought a preliminary injunction: (1) to
prohibit the Commission from enforcing the $1000 limit against
his campaign contributors, and (2) to require the State of
Louisiana to place his name on the general election ballot
regardless of his showing in the primary election.

Khachaturian explained that he had pledges in excess of
$200,000 from supporters who would contribute such funds if the
Campaign Finance Laws were changed, and he argued that major
party candidates have greater access to contributions from
political action committees than independent candidates. Thus,
he said that the $1000 limit discriminated against his candidacy
because, under the law, he could not raise enough money before

_____

office which, in the aggregate, exceed $1000.
2 U.S.C. §441a(a)(1)(A).

- 2 -

Supp. Add. 5

election day.

On September 30, 1992, the district court certified
Khachaturian's constitutional questions to the Fifth Circuit, but
denied his motion for a preliminary injunction.  Three days
later, Senator John Breaux won the Louisiana open primary by a
majority vote.

In December 1992, the en banc Court of Appeals remanded
the plaintiff's case, instructing this Court to dismiss the
complaint if the facts failed to raise "colorable constitutional
claims." Khachaturian v. FEC, 980 F.2d 330, 331 (5 Cir. 1992) (en
banc).

II. LAW AND APPLICATION

A. Standard of Review

Title 2, United States Code, Section 437h governs
judicial review of actions for the construction of constitutional
questions about the Federal Election Campaign Act.  The statute
states:

> ... [A]ny individual eligible to vote in any election
> for the office of President may institute such actions
> in the appropriate district court of the United States
> ... as may be appropriate to construe the constitution-
> ality of any provision of this Act.  The district court
> immediately shall certify all questions of constitu-
> tionality of this Act to the United States court of
> appeals for the circuit involved, which shall hear the
> matter sitting en banc."

2 U.S.C. §437h.

Although the language of the statute requires the
district court to certify all constitutional questions, courts
have held that section 437h does not require automatic certifica-

- 3 -

Supp. Add. 6

tion of every constitutional question to an en banc court of
appeals. See Goland v. United States, 903 F.2d 1247, 1257 (9 Cir.
1990). In fact, in California Medical Association v. Federal
Election Commission, 453 U.S. 182, 193-94 n.14 (1980), the United
States Supreme Court noted that it did not construe section 437h
"to require certification of constitutional claims that are
frivolous ... or that involve purely hypothetical applications of
the statute ... or in cases where the resolution of such ques-
tions required a fully developed factual record."

        Recognizing that what constitutes a frivolous question
for purposes of section 437h does not necessarily subject the
pleader to Rule 11 sanctions, several courts have applied a Rule
12(b)(6) standard in assessing constitutional claims. See Clark
v. Valeo, 559 F.2d 642, 646-47 (D.C. Cir.), aff'd, 431 U.S. 950
(1977); Goland, 903 at 1257. Thus, if as a matter of law, it is
clear that no relief could be granted under any set of facts that
could be proved consistent with the allegations, the court may
dismiss the claim. See Fernandez-Montes v. Allied Pilots Ass'n,
987 F.2d 278, 284 (5 Cir. 1993).

                      B. Khachaturian's Claim

        Title 2, United States Code, Section 441a governs
dollar limits on political contributions. The statute requires:

    No person shall make contributions to any candidate and
    his authorized political committees with respect to any
    office which, in the aggregate, exceed $1000.

2 U.S.C. §441a(a)(1)(A).

        In Buckley v. Valeo, 424 U.S. 1, 26 (1976), the Supreme

                              - 4 -

Supp. Add. 7

Court observed that "[i]t is unnecessary to look beyond the
[Federal Election Campaign] Act's primary purpose – to limit the
actuality and appearance of corruption resulting from large
individual financial contributions – in order to find a constitu-
tionally sufficient justification for the $1,000 contribution
limitation." And finding that the statute imposes evenhanded
restrictions, the Court concluded "that the impact of the Act's
$1,000 contribution limitation on major-party challengers and
minor party candidates does not render the provision unconstitu-
tional on its face." Id. at 31 and 35. The Court did recognize,
however, that "the practical impact of the contribution ceilings
in any given election will clearly depend upon the amounts in
excess of the ceilings that, for various reasons, the candidates
in that election would otherwise have received and the utility of
these additional amounts to the candidates." Id. at 33.

        Here, the plaintiff does not challenge the constitu-
tionality of the statute on its face. Rather, he claims that the
$1,000 contribution limitation is unconstitutional as applied to
his minor party campaign because it "had a serious adverse effect
on the initiation and scope of his candidacy." He complains that
he would have received more than $200,000 from eleven campaign
contributors, but that the $1,000 statutory limit restricted his
contributions and caused him to conduct his campaign with less
than $75,000. He contends that he was prevented from competing
in the political marketplace (but he offers no guidance on why a
$200,000 campaign state-wide would be any more successful than a

- 5 -

Supp. Add. 8

$75,000 campaign).

The law is clear, however, that the $1,000 campaign contribution limit applies to minor party candidates. And although Mr. Khachaturian may have received more substantial campaign contributions if not for the limit, he does not point to any facts regarding "the utility of these additional amounts" regarding the election outcome. He fails to come even close to the Rule 12(b)(6) test for considering constitutional claims. As a matter of law, the plaintiff fails to raise a colorable constitutional claim.

Accordingly, the Court need not conduct an evidentiary hearing to determine frivolousness, and the Federal Election Commission's motion to dismiss is GRANTED.

New Orleans, Louisiana, May 6, 1993.

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

- 6 -