**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 15-5120**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

LAURA HOLMES AND PAUL JOST,

*Plaintiffs-Appellants*,

*v.*

FEDERAL ELECTION COMMISSION,

*Defendant-Appellee.*

On appeal from the United States District Court
for the District of Columbia, No. 1:14-cv-1243 (RMC)

**Reply Brief for Laura Holmes and Paul Jost**

Allen Dickerson (D.C. Cir. No. 54137)
Tyler Martinez (D.C. Cir. No. 54964)

Center for Competitive Politics
124 S. West Street, Suite 201
Alexandria, Virginia 22314
Telephone: 703.894.6800
Facsimile: 703.894.6811
adickerson@campaignfreedom.org
tmartinez@campaignfreedom.org

*Counsel for Plaintiffs-Appellants*

September 30, 2015

**Table of Contents**

Table of Contents ................................................................................... i

Table of Authorities ............................................................................. iii

Glossary of Abbreviations ................................................................... vii

Introduction ........................................................................................... 1

Statutes and Regulations ....................................................................... 1

Summary of the Argument ..................................................................... 1

Argument ................................................................................................ 4

I.     The Commission's merits argument concerning FECA's per-election contribution division is mistaken and irrelevant to the applicability of Section 30110 ........................................................................................... 4

     a.   Appellants' view of the "base limit" is supported by the Supreme Court's most recent examination of the federal candidate contribution limits ................................................................................................. 7

     b.   FECA's per-election limits, and the regulatory system based upon them, harm Appellants' ability to associate with candidates of their choice ................................................................................................ 9

II.    *Buckley* was a facial challenge that specifically reserved judgment concerning future, as-applied challenges to FECA. This is such a challenge ............................................................................................ 11

III.   The district court improperly failed to certify Appellants' substantial Fifth Amendment claim ...................................................................... 13

     a.   FECA, as applied here, imposes unequal outcomes on similarly situated contributors .......................................................................... 13

i

b.  The applicable standard of review involving rights at "the foundation of a free society" is not rational basis ............................................... 16

IV.  This constitutional challenge is substantial under the applicable law. The FECs interpretations are unavailing ...................................................... 18

a.  Congress, the Supreme Court, and the Courts of Appeals mandate adherence to § 30110 ........................................................................ 18

b.  The FEC's string citation to other cases does nothing to illuminate the substantiality of Ms. Holmes and Mr. Jost's claims .................. 24

c.  The FEC's use of the *Khachaturian* district court opinion was inapposite and contrary to this Court's rules .................................... 27

Conclusion ...................................................................................................... 29

Certificate of Compliance ...................................................................... 30

Certificate of Service ............................................................................. 31

# Table of Authorities[1]

## Cases

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
564 U.S. ___, 131 S. Ct. 2806 (2011) ....................................................... 15

*Bread Political Action Committee v. FEC*,
455 U.S. 577 (1982).................................................................................. 19

\* *Buckley v. Valeo*,
424 U.S. 1 (1976)....................................................9, 11, 12, 16, 22, 25, 27

*Buckley v. Valeo*,
519 F.2d 817 (D.C. Cir. 1975)................................................................. 25

*California Medical Association v. FEC*,
453 U.S. 182 (1981)............................................................................ 19, 20

\* *Cao v. FEC*,
688 F. Supp. 2d 498 (E.D. La. 2010) ...............................................3, 22, 23

*Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*,
569 F.3d 485 (D.C. Cir. 2009)................................................................. 28

*Davis v. FEC*,
554 U.S. 724 (2008).................................................................................. 15

*FEC v. Colorado Republican Federal Campaign Committee*,
533 U.S. 431 (2001).................................................................................. 22

*FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27 (1981) ........ 10

*FEC v. Wisconsin Right to Life, Inc.*,
551 U.S. 449 (2007).................................................................................. 12

---

[1] Authorities upon which Appellants chiefly rely are marked with asterisks.

*Gifford v. Congress*,
  452 F.Supp. 802 (E.D. Cal. 1978) ............................................................. 26

*Goland v. United States*,
  903 F.2d 1247 (9th Cir. 1990) .................................................................... 21

*Judd v. FEC*,
  304 F. App'x 874 (D.C. Cir. 2008) ...................................................... 24, 25

*Judd v. FEC*,
  No. 08-1290, 2008 U.S. Dist. LEXIS 57495 (D.D.C. July 28, 2008)........ 24

*Khachaturian v. FEC*,
  980 F.2d 330 (5th Cir. 1992) ...................................................................... 27

*Libertarian National Committee v. FEC*, No. 13-5088, Order (D.C. Cir. Mar. 26,
  2014), ECF No. 1485531 (en banc)............................................................ 22

 *Libertarian National Committee v. FEC*,
  930 F. Supp. 2d. 154 (D.D.C. 2013)....................................................... 3, 21

*Mariani v. United States*,
  212 F.3d 761 (3d Cir. 2000) ....................................................................... 20

* *McCutcheon v. FEC*,
  572 U.S. ___, 134 S. Ct. 1434 (2014) .................................. 2, 7, 8, 9, 16, 17

*National Committee of the Reform Party v. Democratic National Committee*,
  168 F.3d 360 (9th Cir. 1990) ................................................................ 25, 26

*Nixon v. Shrink Missouri Government PAC*,
  528 U.S. 477 (2000).................................................................................... 16

*Republican National Committee v. FEC (In re Anh Cao)*,
  619 F.3d 410 (5th Cir. 2010) ...................................................................... 23

* *Riddle v. Hickenlooper*,
  742 F.3d 922 (10th Cir. 2014) .................................................................... 15

iv

*SpeechNow.org v. FEC*, No. 08-0248 (JR), 2009 U.S. Dist. LEXIS 89011 (D.D.C. Sept. 28, 2009) ........................................................................................... 23

*SpeechNow.org v. FEC*, No. 08-0248 (JR), Order (D.D.C. July 29, 2008), ECF No. 40 .................................................................................................................. 23

\* *Wagner v. FEC*,
    717 F.3d 1007 (D.C. Cir. 2013) ................................................. 3, 18, 19, 20

\* *Wagner v. FEC*,
    793 F.3d 1 (D.C. Cir. 2015) ................................................................. 17, 18

*Whitmore v. FEC*,
    68 F.3d 1212 (9th Cir. 1995) ...................................................................... 26

*Wisconsin Right to Life, Inc. v. FEC*,
    546 U.S. 410 (2006) ............................................................................. 12, 13

## Statutes

28 U.S.C. § 1915A ............................................................................................... 25

52 U.S.C. § 30101 et seq. ...................................................................................... 1

52 U.S.C. § 30101(1)(A) ........................................................................................ 6

52 U.S.C. § 30106(b) ............................................................................................. 6

\* 52 U.S.C. § 30110 ........................................ 3, 4, 7, 18, 19, 20, 21, 23, 24, 25, 29

52 U.S.C. § 30116 .................................................................................................. 6

52 U.S.C. § 30116(a)(1) ......................................................................................... 4

52 U.S.C. § 30116(c) .............................................................................................. 4

52 U.S.C. § 30118(a) ............................................................................................ 20

**Rules**

D.C. Cir. R. 32.1(b)(2) .................................................................... 28

11 C.F.R. § 110.1(b)(3)(i) .............................................................. 10

11 C.F.R. § 110.1(b)(5)(ii)(B) .................................................. 6, 10

**Other Authorities**

FEC, Notice 1987-1, Contribution and Expenditure Limitations and Prohibitions; Contributions by Persons and Multicandidate Political Committees, 52 Fed. Reg. 760 (Jan. 9, 1987) .................................................. 6

FEC, "Khacaturian v. FEC" http://www.fec.gov/law/litigation_CCA_K.shtml#khachaturian ............... 28

## Glossary of Abbreviations

**BCRA** – Bipartisan Campaign Reform Act of 2002, Pub. L. 107-155, 116 Stat. 81 (2002).

**FEC or Commission** – Federal Election Commission

**FECA** – Federal Election Campaign Act of 1971, Pub. L. 92-225, 86 Stat. 3 (1972); the Federal Election Campaign Act Amendments of 1974, Pub. L. 93-443, 88 Stat. 1263 (1974) and Federal Election Campaign Act Amendments of 1976, Pub. L. 94-283, 90 Stat. 475 (1976).

**JA** – Joint Appendix

**Introduction**

The Appellants, Mr. Jost and Ms. Holmes, would like to contribute the full $5,200 allowed by campaign finance laws, no more. They wish to do so *after* the primary election settles who will challenge incumbent members of Congress with whom they disagree. If they give their money—in a single check—the day before the primary, there is no issue with the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101 et seq. If they give their money in the same, single check the day *after* the primary, however, they would violate FECA. The Federal Election Commission ("FEC" or "Commission") has failed to and cannot justify this improper tailoring of FECA to their circumstances. The only issue before this Court is whether Appellants may challenge this improper tailoring under the certification procedure Congress directed for constitutional challenges to FECA.

**Statutes and Regulations**

All applicable portions of the Federal Election Campaign Act ("FECA") and the Commission's interpretive regulations are reproduced in the Addendum to the Opening Brief for Plaintiffs-Appellants.

**Summary of the Argument**

This case does not come to this Court on the merits, but rather on the narrow, procedural question of whether the district court erred in not certifying questions of law to this Court, sitting en banc. Ms. Holmes and Mr. Jost simply ask for the

certification procedure prescribed by Congress, which this Court has held is the "exclusive means" for resolving constitutional challenges to FECA.

The FEC disagrees with Appellants on the merits, and its Answer Brief predominantly focuses on that disagreement. But that is not the issue before this panel. And even when the Commission addresses the issue before this panel—certification—it mischaracterizes Appellants' arguments and the case law.

The Commission reads FECA as emphasizing that *each* contribution limit is for *each* election. Ans. Br. 23-25. Appellants challenge that per-election division as not serving an appropriate governmental interest. In responding to Appellants' constitutional point, the Commission refuses to carry its burden to justify the law. Instead, the FEC turns exacting scrutiny on its head by arguing that *Appellants* must demonstrate why application of the law to them is unconstitutional.

As detailed in the Opening Brief, the courts, the Commission, the regulated community, and the press all recognize that a candidate may raise $5,200 from a donor in an election cycle. Op. Br. at 31-33. The Supreme Court's latest major campaign contribution case, *McCutcheon v. FEC*, 572 U.S. ___, 134 S. Ct. 1434 (2014), based its reasoning on such *combined* "base limits" for contributions. *See*, *e.g.*, *id.* at 1452. Even the *dissents* in *McCutcheon* understood the law to operate this way. *See* Op. Br. at 39-40. Thus at least eight of the Supreme Court justices

understand that Congress designed a system where a single contributor may give up to $5,200 to the candidate of their choice.

But because FECA splits the $5,200 base limit between the primary and general elections, a contributor donating after the primary may only give half that amount—$2,600. This bifurcation applies to the majority of races, and in particular to those at issue in this as-applied challenge. The question of whether Congress may divide the overall contribution limit on a per-election basis is a question of first impression, which necessitates en banc review under 52 U.S.C. § 30110, "the exclusive means of obtaining judicial review in those cases to which it applies." *Wagner v. FEC*, 717 F.3d 1007, 1011 (D.C. Cir. 2013) ("*Wagner I*") (internal citation omitted). In short, certification of valid constitutional questions is mandatory.

Cases such as *Cao v. FEC*, 688 F. Supp. 2d 498 (E.D. La. 2010), and *Libertarian National Committee v. FEC*, 930 F. Supp. 2d. 154 (D.D.C. 2013), demonstrate that all non-trivial challenges under § 30110 ought to be certified—even when the Supreme Court has had multiple opportunities to approve the challenged provision of FECA on other grounds. To these cases, the Commission has no substantive response.

This is a novel case about the right to contribute, a fundamental right that rests at the foundation of a self-governing, democratic state. It ought to be heard, on the merits, by this Court sitting en banc.

**Argument**

I. **The Commission's merits argument concerning FECA's per-election contribution division is mistaken and irrelevant to the applicability of Section 30110.**

The FEC's Answer Brief relies upon a sophistic reading of FECA's "per-election" candidate contribution limits to sidestep Appellant's argument and confuse the procedural issue before this Court. Ans. Br. at 23.

As detailed in the Opening Brief, the courts, the Commission, the regulated community, and the press all recognize that a candidate may raise $5,200[2] from a donor in an election cycle. Op. Br. at 31-33. But under present law, FECA divides this amount: in the overwhelming majority of elections, contributors may give half the base limit in the primary election and half in the general election. So, while a contributor is entitled by statute to give $5,200 to a candidate, that contributor must bifurcate her giving based upon the timing of a particular state's primary election. Once that election has passed, she may no longer donate $5,200 to a candidate.

---

[2] Originally set at $2,000 ($1000 for the primary and $1,000 for the general election), the limit was doubled by Congress in 2002 and indexed for inflation. See Op. Br. at 31 (detailing history and citing JA 272, ¶ 6; 52 U.S.C. §§ 30116(a)(1), (c); JA 273, ¶ 9).

The relevant merits question is whether this system serves to prevent corruption or its appearance, and the relevant question here is whether that specific question has been previously answered. The FEC prefers to avoid both. Instead, it takes a highly technical view of FECA, emphasizing that *each* contribution limit is for *each* election. Ans. Br. at 23-25. While superficially true, this approach ignores political reality: a donation to an unchallenged candidate during the primary season will inevitably be used to further that candidate's general election ambitions.

More importantly, the FEC's reading ignores the manner in which the statute functions as a whole, and it consequently produces an absurd result. Under the FEC's view, there can be no judicial review of FECA's decision to subdivide a non-corrupting contribution on a per-election basis precisely *because* it is subdivided. This approach is akin to avoiding judicial review of a minor's life sentence by instead imposing one-hundred consecutive one-year sentences. The better method, and the one adopted by the Supreme Court when it reviewed contribution limits just last year in *McCutcheon v. FEC,* is to read the statute as a whole in determining the noncorrupting contribution level announced by Congress.

That approach is consistent with the FEC's own long-standing regulations, which have always recognized that a candidate may raise combined contributions (primary and general) from a donor in an election cycle. That is, a donor may give $5,200 in one day, in a single check, to be split between the primary and general

elections—so long as it is done up to the day of the primary. *See* 11 C.F.R. § 110.1(b)(5)(ii)(B). Such regulation was promulgated pursuant to the per-election construction of FECA. *See*, *e.g.*, FEC, Notice 1987-1, Contribution and Expenditure Limitations and Prohibitions; Contributions by Persons and Multicandidate Political Committees, 52 Fed. Reg. 760, 763 (Jan. 9, 1987), *available at* http://www.fec.gov/law/cfr/ej_compilation/1987/1987-1.pdf (interpreting 52 U.S.C. § 30116 and providing guidance on counting pre-primary contributions toward the general election as well).

        To bolster its myopic view of the "per-election" contribution limits, the FEC implies that primary and general elections are fundamentally different. Ans. Br. at 24 (noting that "primaries serve the purpose of determining, in accordance with State law, which candidates are *nominated*," while "[g]eneral elections, by contrast, are held to fill a vacancy in a Federal office") (internal quotation marks omitted) (emphasis in Answer Brief). As a statutory matter, this difference in purposes is irrelevant; FECA regulates all elections, irrespective of their effect. 52 U.S.C. § 30101(1)(A) (defining "election" as "a general, special, primary, or runoff election"); 52 U.S.C. § 30106(b) ("[t]he Commission shall administer, seek to obtain compliance with, and formulate policy with respect to, this Act").

        But, more importantly, the fact that primaries nominate candidates for office and general elections seat candidates in office is irrelevant to the government's

interest in combatting corruption and its appearance. The question here is simple: we know that candidates may accept $5,200 from individuals without implicating the corruption interest—so why does it matter if a candidate receives that check the day before the primary election or the day after?

Finally, the FEC attempts to avoid the obvious fact that the overwhelming majority of races, and in particular the ones involved in this as-applied challenge, involve primary and general election contests. The Answer Brief dismisses this fact in a footnote, Ans. Br. at 26 n.4, and cites a handful of special elections conducted over a span of thirteen years, *id*. at 24-25. None of these rare occasions is relevant. Appellants seek as-applied relief concerning contributions to traditional campaigns where special elections are not a consideration. *See* Op. Br. at 33 n.9.

The Commission cannot point to a single decision addressing FECA's decision to bifurcate and thus limit a noncorrupting contribution. That fact is dispositive. Its argument that no bifurcation exists is incorrect and, more importantly, irrelevant. Those arguments should be addressed to this Court, sitting en banc, pursuant to 52 U.S.C. § 30110.

a. **Appellants' view of the "base limit" is supported by the Supreme Court's most recent examination of the federal candidate contribution limits.**

As discussed *supra*, FECA establishes a "base limit" that is $5,200 per candidate per election cycle. *See* Op. Br. at 37-42 (discussing *McCutcheon v. FEC*,

7

572 U.S. ___, 134 S. Ct. 1434 (2014)). Indeed, as explored in the Opening Brief, *McCutcheon*'s analysis only makes sense if there is a total "base limit" of $5,200.

The Opening Brief explained how integral this understanding of the "base limit" was to the Court. Eight justices joined opinions that discussed the combined primary and general contributions as the "base limits" Congress set under which, by definition, the contributions do not implicate the anticorruption interest. *See* Op. Br. at 38-39. The Answer Brief was dismissive of these extensive quotations from *McCutcheon*, calling them "shorthand" and "dicta." Ans. Br. at 28-29. This characterization, also found in the district court opinion, JA 303, ignores the fundamental role the base limits played in the *McCutcheon* opinion.

Writing for the plurality, Chief Justice John Roberts wrote: "[i]f there is no corruption concern in giving nine candidates *up to $5,200 each*, it is difficult to understand how a tenth candidate can be regarded as corruptible if given $1,801." *McCutcheon*, 134 S. Ct. at 1452 (emphasis added). This statement presupposes, as Appellants do here, that Congress has blessed contributions of $5,200 *for purposes of the anticorruption interest*. That is, the Court has held that once Congress has set the level at which a contribution is noncorrupting, no governmental interest justifies additional contribution limits. *Id*. at 1448 ("The individual may give *up to $5,200* each to nine candidates, but the aggregate limits constitute an outright ban on further contributions to any other candidate" (emphasis added)).

8

The existence of the combined primary and general election limits was at the core of the Court's holding, and therefore not dicta. This was fully explored in the Opening Brief at pages 40-41, and it is simply ignored by the Commission's Answer. In any event, as argued in the Opening Brief and unrefuted by the Answer Brief, "[e]ven assuming the *McCutcheon* passages are 'dicta,' . . . the district court was still bound by the Supreme Court's reasoning." Op. Br. at 39 n.13 (collecting cases from this Court and other Circuits from 1963 through 2013).

   b. **FECA's per-election limits, and the regulatory system based upon them, harm Appellants' ability to associate with candidates of their choice.**

Contrary to the FEC's claims, Ans. Br. at 34, it is FECA's per-election limit that causes Appellants' injury. FECA's per-election structure allows some contributors to give $5,200 for general election purposes but restricts others—like Ms. Holmes and Mr. Jost—to only $2,600. That limitation is real and serves no relevant governmental interest. As discussed at length in the Opening Brief, it has always been recognized that a candidate may raise $5,200 (originally $2,000) from a donor in an election cycle pursuant to Congress's judgment that $5,200 from a single contributor does not pose a danger of corruption. Op. Br. at 31-32; *Buckley v. Valeo*, 424 U.S. 1, 30 (1976); *McCutcheon*, 134 S. Ct. at 1452.

The FEC, as a creature of statute, has written regulations appropriately premised upon Congress's bifurcation of this limit.[3] And while not themselves the cause of Appellants' injury, the Commission's regulations loyally implement the statute that does cause it.

Contributions given for a primary can be carried over to a general election. 11 C.F.R. § 110.1(b)(5)(ii)(B). Thus, a contributor who gives $5,200 in earmarked contributions the day *before* a primary election may functionally give $5,200 for general election purposes. And, as outlined in the Opening Brief, the FEC has demonstrated that there is no anticorruption interest preventing a $5,200 contribution *after* the primary election by permitting such donations in very limited circumstances.  11 C.F.R. § 110.1(b)(3)(i) (limiting use of the "primary" portion of the funds to retiring outstanding debts from that specific, prior election); Op. Br. at 32-33. But, barring the limited circumstance of outstanding campaign debts, the contributor is limited to a single $2,600 contribution for the general election. This per-election division thus favors certain contributors by *doubling* the scope of their

---

[3] Obviously, the FEC cannot write a regulation contrary to statute. The Supreme Court has repeatedly held that courts "must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981). No such rejection has taken place for the Commission's regulations on the bifurcation of candidate contribution limits between the primary and general elections.

10

association rights, doing so as a matter of both regulatory *and* statutory design, while restricting that right for others.

The FEC repeatedly suggests that Appellants' "injury is entirely self-imposed" because Appellants made a "choice" not to give in the primary. *See, e.g.*, Ans. Br. at 18-19. That choice was made, and Appellants have explained why. *See* Op. Br. at 7-8. But the burden is not on Appellants to show that their preferred means of giving is prudent, beneficial, or sound (although it is all of those things). The burden is on the FEC to demonstrate, under exacting scrutiny, that legally prohibiting their preferred means of contributing serves the government's anticorruption interest.

Even were this appeal addressed to the merits of Appellants' claims, the FEC could not carry this burden. But here, that burden is substantially heavier: because this Court—sitting en banc—has sole jurisdiction over Appellants' claims, the Commission must show that those claims are not merely mistaken but *already* considered and foreclosed by binding precedent. This it cannot do.

## II.    *Buckley* was a facial challenge that specifically reserved judgement concerning future, as-applied challenges to FECA. This is such a challenge.

The *Buckley* Court encountered a facial challenge to FECA's contribution limits. *Buckley*, 424 U.S. 29 (First Amendment facial overbreadth challenge); *id.* at 30-31 (Fifth Amendment challenge noting that "appellants argue that the . . .

11

statutory provisions must be declared unconstitutional on their face"). The *Buckley* Court's rejection of a facial challenge cannot foreclose all future as-applied challenges. Indeed, the *Buckley* Court recognized the possibility of future challenges that would raise "more serious argument[s] that [FECA's] limitations . . . invidiously discriminate." *Id*. at 31 n.33; *see also Wis. Right to Life, Inc. v. FEC*, 546 U.S. 410, 411-412 (2006) ("*WRTL I*") (noting that the Supreme Court, "[i]n upholding [a statute] against a facial challenge, [does] not purport to resolve future as-applied challenges"). This case raises such an as-applied challenge.

The FEC argues that the district court correctly rejected Appellants arguments because the *Buckley* Court rejected a facial challenge to "FECA's per-election limit." Answer Br. at 21. This argument is inapposite, however, because Appellants raise an as-applied challenge, not the facial challenge brought in *Buckley*.

Furthermore, the difference in the standards applied in as-applied as opposed to facial challenges diminishes the persuasive value of the *Buckley* Court's ruling. First Amendment facial claims, like those addressed in *Buckley*, face a "heavy burden." *See*, *e.g.*, *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 456 (2007) ("*WRTL II*"); *Buckley*, 424 U.S. at 31 ("a court should generally be hesitant to invalidate legislation which on its face imposes evenhanded restrictions"). In contrast, where, as here, a party seeks narrower relief, as-applied challenges are appropriate even where the Supreme Court has upheld the relevant statute against a facial challenge.

12

*See WRTL I*, 546 U.S. at 411-12 (directing district court to consider as-applied challenge to BCRA regarding particular type of advertisement plaintiff wished to run, even though the Supreme Court had upheld the statute against a facial challenge).

Moreover, despite its insistence that Appellants' as-applied claims are "foreclose[d]" (Ans. Br. at 32, 37, 43), the FEC fails to cite to any as-applied challenge involving similar facts and legal arguments. Indeed, even if *Buckley* had involved an as-applied challenge, *Buckley* still could not control because it addressed the facial claims of a minor party *candidate* concerned about loss of funding, whereas this case addresses the associational rights of *contributors* whose rights are arbitrarily halved based upon the timing of a contribution. *See* Opening Brief at 42-43, 44 n. 15, 45-46.

Accordingly, the FEC has failed to demonstrate that Appellants' case is foreclosed by Supreme Court precedent.

### III.    The district court improperly failed to certify Appellants' substantial Fifth Amendment claim.

#### a.    FECA, as applied here, imposes unequal outcomes on similarly situated contributors.

The Commission's Answer Brief notes that "the core concern of the Constitution's equal protection guarantee is shielding against arbitrary government classifications." Ans. Br. at 38 (punctuation altered) (internal quotation marks

13

omitted). Quite so. Here, Appellants maintain that FECA's per-election division of the contribution limits works arbitrary and unequal results. No court has stated otherwise.

Despite the FEC's protestations to the contrary, any person giving $5,200 to an unopposed Republican candidate for U.S. Senate in Iowa before the primary election knows that these funds will not be used during the primary campaign to defeat other Republican candidates. Rather, that person knows that the full $5,200 will go to advance the general election prospects of the (assured) Republican nominee. But, if the Democratic Party has a contested primary race for that same Senate seat, no Democratic donor can similarly give a full $5,200 for the general election campaign.

Nevertheless, the FEC insists that classifying different contributors based on when they contribute does not impose a Fifth Amendment harm. Whether this classification, which treats contributors differently and hinders some from the full exercise of their associational liberties, is constitutional is a merits question for another day. But it is clear that no court, and certainly no decision of the Supreme Court, has addressed and foreclosed that question.

Forgetting that this is not an appeal on the merits, the FEC attempts to turn this judicial silence to its advantage. Hence it claims that that "no case supports"— at least directly—Appellants' "equal protection claims." Ans. Br. at 43

14

(capitalization altered). But the Commission goes further, suggesting that *Davis v. FEC*, 554 U.S. 724 (2008), *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. ___, 131 S. Ct. 2806 (2011), and *Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014), indicate that the Supreme Court has closed the door on equal protection challenges to FECA. Ans. Br. at 43. This is incorrect.

*Davis* struck down a law requiring certain candidates to "remain[] subject to the [contribution] limitations," but permitting "the candidate's opponent . . . [to] receive individual contributions at treble the normal limit." *Davis*, 554 U.S. at 729, 744-45. *Arizona Free Enterprise* struck a statute with similar asymmetric effects for campaign treasuries. 131 S. Ct. at 2818-19, 2828-29. And *Riddle* struck a state statute—under the Fifth Amendment—that allowed some general election candidates to receive, for the general election, twice as much money from individual donors as other candidates. 742 F.3d at 924-25, 929-30.

It is true that none of these cases directly control the matter at hand, because it is quite literally unprecedented. But it does not follow that *Davis*, *Arizona Free Enterprise*, and *Riddle* have no persuasive value. Rather, they suggest that—given the Supreme Court and lower courts' prior treatment of contribution limits having an asymmetric effect—Appellants' Fifth Amendment challenge deserves a hearing on the merits.

15

**b. The applicable standard of review involving rights at "the foundation of a free society" is not rational basis.**

Having argued that FECA's per-election classification is not a classification, the Commission suggests that "the per-election contribution limit easily satisfies the applicable level of constitutional review." Ans. Br. at 46 (capitalization altered). Leaving aside that this statement concerns the merits of Appellants' claim, it also contains a significant legal error. Specifically, the FEC argues that the per-election contribution limit "would be subject to nothing more than the most deferential standard of review" because it does not "infringe[] fundamental constitutional rights." *Id.* (internal quotation marks omitted).

The right to contribute is "a basic constitutional freedom that . . . lies at the foundation of a free society." *Buckley*, 424 U.S. at 25 (citation omitted) (internal quotation marks omitted). As with all fundamental liberties, the Government may constitutionally infringe the right to contribute, under the proper circumstances. *See, e.g.*, *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 381, 397-98 (2000) (upholding state $1,075 limit on contributions to candidates). This does not make that right any less fundamental, or minimize the need to scrutinize that infringing activity. Just two Terms ago, the Supreme Court stated that the ability to "contribute to a candidate's campaign" was part and parcel of the "right to participate in electing our political leaders," which the Court characterized as the most basic right that Americans enjoy.

*McCutcheon*, 134 S. Ct. at 1440-1441. Here, Appellants seek only to fully embrace that right to the exact same level enjoyed by others, and for the same purposes. The Commission's suggestion that contribution limits are subject to "the most deferential standard of review" is not and has never been the law.

The Commission compounds its error by suggesting that this Court's recent ruling in *Wagner v. FEC*, 793 F.3d 1, 32 (D.C. Cir. 2015) ("*Wagner II*"), supports the application of a rational basis standard. Ans. Br. at 48 ("This Court recently confirmed, en banc, that plaintiffs cannot obtain more scrutiny for a constitutional challenge to a statutory contribution limit" by seeking review under the equal protection doctrine). But, unlike Appellants in their Opening Brief, the Commission neglects to note that the *Wagner II* Court nevertheless applied heightened scrutiny, not rational basis review. Op. Br. at 51.

Regardless, Appellants reiterate that *Wagner* is inapplicable to this case. *Wagner* was resolved upon consideration of "the state's interest in 'allowing governmental entities to perform their functions,'" an interest not implicated by Appellants. Op. Br. at 52 (quoting *Wagner II*, 793 F.3d at 8). This is because the *Wagner* plaintiffs were government contractors, not general members of the public, and so were subject to special restrictions on their political contributions. *Wagner II*, 793 F.3d at 6-7 (collecting cases approving special regulation of government employees). Moreover, unlike in *Wagner*—a merits determination wherein plaintiffs

17

acknowledged no instance of an equal protection challenge succeeding where a First Amendment challenge had failed—"the *Riddle* case provides ample evidence that Fifth Amendment remedies are available when contribution limits violate the equal protection of the laws." Op. Br. at 52.

Accordingly, Appellants' novel, substantial claim ought to be certified for merits review by the en banc Court.

### IV.    This constitutional challenge is substantial under the applicable law. The FECs interpretations are unavailing.

Contrary to the FEC's arguments, *see*, *e.g.*, Ans. Br. at 49-62, applicable precedent demonstrates that this case presents questions of unsettled law and, consequently, a substantial constitutional challenge.

### a.    Congress, the Supreme Court, and the Courts of Appeals mandate adherence to § 30110.

As Appellants discussed before, *see* Op. Br. at 9, Congress mandated expedited review of constitutional challenges to FECA. *See* 52 U.S.C. § 30110; *Wagner I*, 717 F.3d at 1011 (holding that § 30110 provides "*the exclusive means* of obtaining judicial review"); *see also id*. (noting that Congress's intent was to deprive district courts and circuit court panels of jurisdiction and that the statute "grant[ed] exclusive merits jurisdiction to the *en banc* court of appeals").[4] Appellants and

---

[4] This Court, en banc, decided the merits of the *Wagner* challenge in *Wagner II*, 793 F.3d 1.

Appellee disagree, however, whether the exception to § 30110 for "frivolous or . . . settled legal questions" applies. *Wagner I*, 717 F.3d at 1009; *see* Op. Br. at 19-20; Ans. Br. at 50-51.

The FEC has consistently argued that the district courts must serve a "gatekeeping function" for the sake of judicial economy *See*, *e.g.*, Ans. Br. at 51 (citing *Bread Political Action Comm. v. FEC*, 455 U.S. 577 (1982)). But as noted in the Opening Brief, *see* Op. Br. at 18, 20-21, this point is overstated. The Supreme Court in *Bread PAC* recognized the potential burden imposed by § 30110's expedited review provision, but nonetheless emphasized that "[j]urisdictional statutes [like § 30110] are to be construed with precision and with fidelity to the terms by which Congress has expressed its wishes." *Bread PAC*, 455 U.S. at 580 (internal quotation marks omitted). Unlike the claimant at issue in *Bread PAC*, there is no doubt that Appellants are within the class entitled by statute to that expedited provision, and fidelity to Congress's wishes requires that this case be heard en banc.

The Supreme Court's decision in *California Medical Ass'n v. FEC*, 453 U.S. 182 (1981) ("*Cal. Med.*"), similarly undercuts the FEC's judicial economy argument. *See* Ans. Br. at 51-52. The *Cal. Med.* Court considered similar arguments and cautioned against "exaggerat[ing] the burden [§ 30110] actions have placed on the federal courts." 453 U.S. at 192 n.13. In short, the Supreme Court has unambiguously rejected attempts to second-guess Congress's judgment in enacting

19

§ 30110 or to circumscribe that provision's clear language. Therefore, the relevant test under FECA is straightforward: constitutional challenges must proceed under § 30110's special review provisions unless they "are frivolous or involve settled legal questions." *Wagner I*, 717 F.3d at 1009.

As noted in the Opening Brief, the tests for "frivolousness" and "settled legal questions" is the same: whether a party raises an issue that has already been definitively decided. Op. Br. at 18-19 (citing *Cal. Med.* 453 U.S. at 192 n. 14 and *Mariani v. United States*, 212 F.3d 761, 769 (3d Cir. 2000) (en banc)). The FEC took exception to this characterization, saying, "Holmes and Jost have no authority for their expansive interpretation." Ans. Br. at 54. This is incorrect.

In *Mariani*, the Third Circuit determined that a question was not "frivolous" by examining whether it was settled law. *Mariani*, 212 F.3d at 769 ("Mariani's claim is not frivolous . . . Mariani's challenge to [52 U.S.C] § [30118](a) is not simply a sophistic twist, but can fairly be characterized as a new challenge" (citations omitted) (internal quotation marks omitted)). The *Cal. Med.* Court similarly linked a claim's weight to the novelty of the legal question it presented. *Cal. Med.* 453 U.S. at 192 n.14 ("as evidenced by the divided en banc court below, the issues here are neither insubstantial nor settled. We therefore conclude that this case is properly before us pursuant to § [30110]").

20

The Court of Appeals decisions cited by the FEC either fail to support its arguments or support certification here. For example, while the Ninth Circuit ultimately rejected a challenge in *Goland v. United States*, 903 F.2d 1247 (9th Cir. 1990), the court nonetheless held that "[o]nce a core provision of FECA has been reviewed and approved by the courts, unanticipated variations also may deserve the full attention of the appellate court." *Goland*, 903 F.2d at 1257; *compare* Ans. Br. at 55. Thus, while "not every sophistic twist that arguably presents a 'new' question should be certified," *Goland*, 903 F.2d at 1257, district courts ought to certify questions that pose genuinely new questions. Because the Supreme Court has never considered the constitutionality of the per-election limitation on contributions as it applies here, *Goland* supports Appellants' argument. *See* Op. Br. at 19-20.

Likewise, the FEC's discussion of *Libertarian National Committee v. FEC*, 930 F. Supp. 2d. 154 (D.D.C. 2013) ("*LNC*"), largely avoids the Opening Brief's discussion of the case. *See* Ans. Br. at 56-57; Op. Br. at 28-29. Both the Opening Brief and Answer Brief acknowledged that some questions—namely, the facial challenge in *LNC*—were found inappropriate for certification. *Compare* Op. Br. at 28-29, *with* Ans. Br. at 56. The importance of the *LNC* ruling, however, lies in its recognition that the § 30110 procedure is jurisdictional and requires a judge to reframe a plaintiff's claims in order to preserve any viable challenge. *See LNC*, 930 F.Supp. 2d at 171. The Answer Brief disregards *LNC* as involving "completely

21

aberrant circumstances." Ans. Br. at 57. But bequests happen with some regularity, and the question remains whether a political party may take an unsolicited contribution in one lump sum.[5]

The Commission claims that "*Cao v. FEC*, 688 F. Supp. 2d 498 (E.D. La. 2010), also supports the Commission's position, not Contributors'." Ans. Br. at 58. The Commission points to the two rejected claims in that case while avoiding the fact that other claims were in fact certified. In fact, as was mentioned in the Opening Brief, the *Cao* court certified a question that, arguably, had been passed on by *two* major Supreme Court decisions: whether the $5,000 contribution limit on PAC-to-candidate contributions was unconstitutional as applied to a political party's PAC. Op. Br. at 24-25. This PAC-to-candidate contribution limit had been upheld in prior Supreme Court cases, including *Buckley*, 424 U.S. at 35-36, and *FEC v. Colorado Republican Federal Campaign Committee*, 533 U.S. 431, 438-39, 465 (2001) ("*Colorado II*").

Nevertheless, the *Cao* district court concluded that this question was appropriate for certification because the Supreme Court had never directly considered Cao's *argument* in either *Buckley* or *Colorado II*. *Cao*, 688 F. Supp. 2d

---

[5] Because the bequest was exhausted following certification, this Court ruled the matter moot. *Libertarian National Committee v. FEC*, No. 13-5088, Order (D.C. Cir. Mar. 26, 2014), ECF No. 1485531 (en banc).

at 547. The en banc Fifth Circuit determined that this certification was appropriate, and considered the challenge on its merits. *Republican Nat'l Comm. v. FEC (In re Anh Cao),* 619 F.3d 410, 420-21 (5th Cir. 2010) (en banc). *Buckley*'s relative silence concerning the claims in this case bear comparison to the Court's multiple pages of analysis concerning PAC contributions. The *Cao* decisions consequently highlight that Appellants' claims on the bifurcated contribution limits are substantial and do not involve settled law—especially as the arguments raised here have simply never been considered by the courts of appeals, much less the Supreme Court.

In a footnote, the FEC tries to distinguish the Appellants' use of *SpeechNow.org v. FEC*, No. 08-0248 (JR), 2009 U.S. Dist. LEXIS 89011 (D.D.C. Sept. 28, 2009). Ans. Br. at 62 n.10. Citing an unpublished order, the Answer Brief counters that "the district court [in *SpeechNow.org*] had earlier reviewed briefing from the parties and determined whether the questions" were substantial. *Id.* The order, however, exemplifies Judge Robertson's restraint, because he found that "[t]he motion . . . *appears on its face* to state questions certifiable under [52 U.S.C. § 30110]." *SpeechNow.org v. FEC*, No. 08-0248 (JR), Order at 1 (D.D.C. July 29, 2008), ECF No. 40 (emphasis added). Far from extensive inquiry, the *SpeechNow* court performed its duty to certify constitutional questions without deciding their merits.

Thus, the cases discussed by the FEC fail to demonstrate that *Buckley,* or any other decision, has considered either the claims raised here or the arguments in support of those claims.  Consequently, certification is appropriate.

> **b. The FEC's string citation to other cases does nothing to illuminate the substantiality of Ms. Holmes and Mr. Jost's claims.**

The FEC's string citation to cases where some courts have "refused to certify frivolous or settled constitutional claims," while lengthy, does not alter the conclusion that certification is appropriate *here*. Ans. Br. at 53. Whether a claimant brings a substantial constitutional claim is highly dependent on facts and the legal challenge presented.

For example, the Commission's citation to *Judd v. FEC*, 304 F. App'x 874, 875 (D.C. Cir. 2008) (per curiam) is unhelpful. Mr. Judd was a prisoner in Texas, whose challenge was characterized by the district court as "fantastic or delusional" because he sought, *inter alia*, "a declaratory judgment that [FECA] [was] unconstitutional insofar as it  . . . require[d] him to file monthly finance reports . . . [and] violate[d] the Takings Clause.'" *Judd v. FEC*, No. 08-1290, 2008 U.S. Dist. LEXIS 57495 at *3-4 (D.D.C. July 28, 2008) (citation omitted). As the Court of Appeals noted, many of Mr. Judd's claims were already settled questions. Indeed, the challenge was not only frivolous for purposes of the § 30110 procedure, but also

under the screening procedure for prisoner complaints. *Judd*, 304 F. App'x at 875-76 (dismissing under 28 U.S.C. § 1915A, as well as 52 U.S.C. § 30110).

The FEC's other cases are equally inapposite. In *National Committee of the Reform Party of the United States v. Democratic National Committee* ("*Reform Party*"), 168 F.3d 360 (9th Cir. 1999), the Reform Party sought to challenge the very structure of the FEC itself—twenty five years after the agency's creation—based on the Appointments Clause. *Id*. at 364-65. The structure of the FEC was a major focal point of the *Buckley* challenge, both in this Court and before the Supreme Court. *See Buckley v. Valeo*, 519 F.2d 821, 889-93, 896 (D.C. Cir. 1975); *id*. at 920-921 (Tamm, J., dissenting in part and concurring in part); *id*. at 923-934 (MacKinnon, J., dissenting); *see also Buckley*, 424 U.S. at 124-143; *id.* at 267-286 (White, J., dissenting in part and concurring in part) (discussing appointment procedures).

The Reform Party also claimed that the public financing provisions discriminated against minor parties. *Reform Party*, 168 F.3d at 365-66. But that too was fully examined in *Buckley*—which included minor party plaintiffs bringing the very same argument based on substantively similar facts. *Id*.; *id.* at 367 ("[t]he effects about which the Reform Party now complains were understood and taken into account by the Supreme Court when it rejected the challenges presented in *Buckley*"); *Buckley*, 424 U.S. at 93-97.

The FEC also notes that the Reform Party sought to privatize FECA through state common law remedies. Ans. Br. at 53. Those claims were based on state tort law, and they sought to privatize FECA to create a private enforcement mechanism. *Reform Party*, 168 F.3d at 364. To compare that claim—a tort claim not cognized by FECA—with Appellants' constitutional argument is unpersuasive. In fact, it demonstrates just how far afield a claim must be to merit dismissal rather than certification.

The FEC's remaining cases are equally inapposite. *Gifford v. Congress*, 452 F. Supp. 802, 805 (E.D. Cal. 1978) ("plaintiff's sole constitutional claim [is] that Congress does not have the authority to regulate the election campaigns of unofficial candidates"); *Whitmore v. FEC*, 68 F.3d 1212, 1215-16 (9th Cir. 1995) (challenge by third-party candidate, based upon political theory as opposed to law, against the legality of out-of-state contributions).

In contrast to *Whitmore*, *Gifford*, and *Reform Party*, Appellants in this case are not asking the court to bless a political theory, or define "candidate," or adopt state tort law. Instead, Ms. Holmes and Mr. Jost wish to give to the candidates of their choice, at the time when the contribution matters most. FECA specifically prohibits them from making that contribution just one day after the primary election, even though it would be lawful the day before. The Commission's string of irrelevant citations does not change the fact that this circumstance has never been considered.

26

c. **The FEC's use of the *Khachaturian* district court opinion was inapposite and contrary to this Court's rules.**

Contrary to the FEC's assertion, Ans. Br. at 61 n. 9, Appellants correctly described and applied *Khachaturian v. FEC*, 980 F.2d 330 (5th Cir. 1992).

First, in their Opening Brief, Appellants described the Fifth Circuit's application of "the extremely high standard for declaring a case insubstantial." Op. Br. at 26. The Opening Brief noted that Mr. "Khachaturian argued[d] that the [individual contribution] limit [was] unconstitutional as applied to his independent candidacy." *Id.* (quoting *Khachaturian*, 980 F.2d at 331) (brackets in Op. Br.). But, as described in the Opening Brief, *Buckley* had considered the *precise claim* Mr. Khachaturian raised. *Id.* (citing *Khachaturian*, 980 F.2d at 331, and *Buckley*, 424 U.S. at 33-35). It was thus an instructive case showing the level of specificity needed to declare a case "insubstantial." Appellants acknowledged the outcome in *Khachaturian*. Op. Br. at 27 (noting that "unlike in *Cao*, certification was properly declined" in *Khachaturian*). Thus, Appellants properly used *Khachaturian* to illustrate when a case should *not* be certified, and contrasted that decision with the certified questions in *Cao*. As both cases are decisions of the Fifth Circuit, the contrast is enlightening and helps demonstrate that Appellants' claims far more closely resemble the questions that were certified.

27

Furthermore, the FEC's use of an unpublished opinion—not readily available anywhere—to describe the end result of the *Khachaturian* litigation is both improper and irrelevant.[6] As Appellee admits, citation to the decision contravenes this Court's rules. Ans. Br. at 61 n.9; D.C. Cir. R. 32.1(b)(2).

But, even if the FEC could properly use the case, it never attempted to show that *Khachaturian* has preclusive effect.[7] Neither the Fifth Circuit nor the Eastern District of Louisiana examined Appellants' claims, which are based on different facts and legal theories. Thus the *Khachaturian* opinion has neither res judicata nor preclusive effect upon Appellants' challenge in this Circuit. Instead, the FEC cites the unpublished opinion merely to describe the irrelevant end result of the *Khachaturian* litigation.

The FEC's production of the unpublished order does nothing to counter the description of the Fifth Circuit ruling offered by Appellants. As the Opening Brief readily acknowledged, certification in *Khachaturian* was not appropriate because

---

[6] The decision is not reported in the West Reporter system, not catalogued in LexisNexis, and not downloadable from PACER. Even the FEC's website, which often includes the filings and court decisions of cases to which it is a party, has not made the *Khachaturian* district court opinion available. *See* FEC, "Khachaturian v. FEC," http://www.fec.gov/law/litigation_CCA_K.shtml#khachaturian (reproducing only selected phrases from the opinion).

[7] *See, e.g., Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (listing elements for res judicata).

28

*Buckley* specifically ruled on the precise issue and facts in that case. At this stage, that is all that is relevant.

Thus, the FEC's use of the *Khachaturian* district court order and its extensive but unpersuasive string citations do not change the central fact governing this appeal: Appellants' case presents novel, substantial claims for review by this Court, questions that have never been considered, much less passed upon, by any court in the country.

### Conclusion

For the foregoing reasons the judgment of the district court should be reversed and the merits of Appellants' constitutional claims certified to this Court, sitting en banc, pursuant to 52 U.S.C. § 30110.

Respectfully Submitted,

s/ Allen Dickerson
Allen Dickerson (D.C. Cir. No. 54137)
Tyler Martinez (D.C. Cir. No. 54964)

Center for Competitive Politics
124 S. West Street, Suite 201
Alexandria, Virginia 22314
Telephone: 703.894.6800
Facsimile: 703.894.6811
adickerson@campaignfreedom.org
tmartinez@campaignfreedom.org

*Counsel for Plaintiffs-Appellants*

Dated: September 30, 2015.

29

## Certificate of Compliance

I hereby certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 6,661 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.


Dated: September 30, 2015              s/ Allen Dickerson
                                       Allen Dickerson

**Certificate of Service**

I hereby certify that I electronically filed the foregoing Reply Brief for Plaintiffs-Appellants using the court's CM/ECF system which will automatically generate and send by email a Notice of Docket Activity to all registered attorneys currently participating in this case, constituting service on those attorneys. D.C. Cir. R. 25(d).

Steve Nicholas Hajjar                    shajjar@fec.gov

Charles P. Kitcher                       ckitcher@fec.gov

Erin Rebecca Chlopak                     echlopak@fec.gov

Kevin Andrew Deeley                      kdeeley@fec.gov

Dated: September 30, 2015          s/ Allen Dickerson
                                   Allen Dickerson

31